# CHARLESTON.

## STATE v. FREDERICK J. EMSWELLER.

## STATE v. JOSEPH J. JENKINS.

### Submitted April 4, 1916.    Decided April 18, 1916.

1. CRIMINAL LAW—*Jurisdiction—Justice of the Peace—Sufficiency of Warrant.*

    A conviction by a justice of the peace on a warrant stating no facts constituting an offense is void. (p. 220).

2. SAME—*Summary Trial—Authority for Arrest.*

    An arrest made on a void search warrant is illegal, and a conviction of the person arrested thereon, in a justice's court, is illegal and void. (p. 220). ,

3. SEARCHES AND SEIZURES—*Search Warrant—Validity.*

    A search warrant not describing and designating some particular house, building or place for search, is void. (p. 220).

4. INTOXICATING LIQUORS—*Prosecution—Sufficiency of Warrant.*

    A warrant charging that intoxicating liquors are being manufactured, sold, offered, exposed, kept or stored for sale, or bartered, in a certain suit case, trunk or other container in the possession of a certain person in the roads, streets, alleys or room in the county, does not charge the person in whose possession the suit case, trunk or container is alleged to be, with manufacturing, selling etc. nor with having, keeping or carrying such liquors unlawfully, nor with any other offense under the statute. (p. 217).

5. SAME—*Offenses—Carrying Liquor.*

    Chapter 13 of the Acts of 1913, as amended by chapter 7 of the Acts of 1915, does not make it unlawful for a citizen to carry or transport one-half of one gallon of intoxicating liquors, without a statutory label, or more with such label, on and along any public highway, to his home for his personal use there. (p. 219).

6. CRIMINAL LAW—*Justices of the Peace—Docket.*

    . A justice's docket entry of judgment in a criminal case need not recite findings of fact sufficient to constitute an offense; and a person under conviction by such a judgment will not be discharged on a writ of *habeas corpus* for lack of such recital; but such docket entries are only *prima facie* evidence of the jurisdictional facts essential to a valid conviction. (p. 221).

7. SAME—*Habeas Corpus—Right to Relief—Plea of Guilty.*

    A plea of guilty to a void warrant involves no admission of

guilt and does not preclude discharge on a writ of *habeas corpus.* (p. 224).

8. SAME—*Writ of Error—Dismissal.*

Discharge on such writ, of a person prosecuting a writ of error to a judgment refusing him an appeal from the judgment under which he is illegally restrained of his liberty, terminates the controversy involved in the writ of error, and it will be dismissed, on such discharge, as then involving only a moot case. (p. 225).

9. SAME—*Appeal—Right of Defendant.*

A person under conviction of a criminal offense by a justice of the peace is entitled to an appeal within a reasonable time, as a matter of right. (p. 225).

10. SAME.

Such an appeal should be allowed by the justice who rendered the judgment, if applied for within a reasonable time, and, if he refuses it, application therefor may be made to the circuit court of the county, or the judge thereof in vacation. (p. 225).

11. SAME—*Writ of Error—Appeal from Justice of the Peace.*

Refusal of the justice to allow such an appeal is sufficient cause for allowance thereof by such court or judge, and refusal thereof by the latter, under such circumstances, justifies a writ of error from this court to the judgment of refusal. (p. 225).

12. SAME—*Writ of Error—Review.*

A doubt arising on the evidence as to whether such preliminary application was made to the justice should be resolved in favor of the applicant for the appeal. (p. 226).

(MILLER, JUDGE, absent.)

Error to Circuit Court, Monongalia County.

Frederick J. Emsweller was convicted of a violation of the liquor law by a justice of the peace, and applied for a writ of habeas corpus to John B. Wallace, sheriff, and others. Judgment refusing discharge, and he brings error. Reversed and prisoner discharged. From a judgment denying an appeal from the justice's judgment of conviction, he also brings error.

*Writ of error dismissed.*

Joseph J. Jenkins was convicted of a violation of the liquor

law by a justice of the peace, and from a judgment refusing an appeal he brings error.

*Reversed and remanded, with directions.*

*Van A. Barrickman,* for plaintiffs in error.

*Fred O. Blue* and *John T. Simms,* for defendants in error.

POFFENBARGER, JUDGE:

Frederick J. Emsweller sentenced, by a justice of the peace to imprisonment in the county jail of Monongalia County for a period of sixty days, and further punished by the infliction of a fine of $100.00 and costs including an attorney's fee of $10.00, all to be worked out on the public roads, as for a violation of chapter 13 of the acts of the Legislature of 1913, known as the Yost Law, sought a discharge, in the circuit court of said county, on a writ of habeas corpus. To the judgment refusing to discharge him and remanding him, he obtained this writ of error. He was also denied an appeal from the justice's judgment to the circuit court, and obtained a writ of error here to the judgment of that court refusing an appeal. Joseph J. Jenkins, punished at the same time and in like manner and upon the same kind of a charge, also obtained a writ of error to a judgment refusing him an appeal.

The complaint, made by the chief of police of the city of Morgantown and *ex-officio* a constable of the county, charged that he had cause to believe intoxicating liquors were "being manufactured, sold, offered, exposed, kept or stored for sale, or bartered in said county aforesaid in that certain suit case, trunk or other container in the possession of one F. J. Emsweller in the roads, streets, alleys or room in said county contrary to the laws of the State of West Virginia," and prayed a warrant for seizure of "all liquors found therein, together with all vessels, bar fixtures, screens, glasses, bottles, jugs and other appurtenances apparently used in the sale, keeping or storing of liquors contrary to law," and the arrest of "all parties or persons found in said room or place." The warrant recited the substance of the complaint and then commanded entry of "that certain room or place in said county aforesaid," and search and seizure of "all liquors found

therein, together with all vessels" etc., and the arrest of "all parties or persons found in said premises." The return of the officer shows the arrest of Emsweller and seizure of six pints of beer in "said room." ˙The entry on the justice's docket recites arraignment of the accused and his plea of guilty.

The statute under which the complaint is said to have been made is sec. 7 of ch. 13 of the Acts of 1913, as amended by ch. 7 of the Acts of 1915 providing as follows: "It shall be unlawful for any person to keep or have for personal use or otherwise, or to use, or permit another to have, keep or use, intoxicating liquors at any restaurant, store, office building, club, place where soft drinks are sold (except a drug store may have and sell alcohol and wine as provided by sections four and twenty-four), fruit stand, news stand, room, or place where bowling alleys, billiard or pool tables are maintained, livery stable, boat house, public building, park, road, street or alley. It shall also be unlawful for any person to give or furnish to another intoxicating liquors, except as otherwise hereinafter provided in this section. Any one violating this section shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than one hundred dollars, nor more than five hundred dolars, and be imprisoned in the county jail not less than two nor more than six months; *provided, however,* that nothing contained in this section shall prevent one, in his home, from having and there giving to another intoxicating liquors when such having or giving is in no way a shift, scheme or device to evade the provisions of this act; but the word "home" as used herein, shall not be construed to be one's club, place of common resort, or room of a transient guest in a hotel or boarding house."

Sec. 31 of ch. 13 of the Acts of 1913, added by ch.,7, Acts of 1915, makes it unlawful for any person to bring or carry into the State, or from one place to another within the State, even when intended for personal use, liquors exceeding in the aggregate one-half of one gallon in quantity, unless there is plainly printed or written on the side or top of the suit case, trunk or other container in large display letters, in the English language, the contents of the container or containers, and

the quantity and kind of liquors contained therein.· Violation of this section is made a misdemeanor punishable by fine and imprisonment. It also says the liquors not labeled may be seized and shall be conclusive evidence of unlawful keeping, storing and selling, against the person having them in his possession.·

Sec. 9 of the Act authorizes a warrant for the search of any house, building or other place in which it is charged the manufacture, sale, offering, keeping or storing for sale or bar·ter of liquors contrary to law, is carried on, seizure of fixtures and arrest of persons found therein. The complaint and warrant here involved treat a suit case,· trunk or other container as a place of manufacture, sale, offering, keeping or storing for sale or barter within the meaning of that section. They proceed upon the theory that the mere possession of intoxicating liquors in a suit case, trunk or other container in any road, street, alley or room is an offense. Sec. 9 contemplates a house, building, boat or place in which persons may be and perform the forbidden acts of manufacture, sale, etc. A suit case, trunk or other small container of liquors or packages of liquors is not such a· place. Although the warrant commands a search of "that certain room or place," it is to be observed that no particular room or place is designated in either paper. Hence, it, too, must intend "that certain suit case, trunk or other container in the possession of one F. J. Emsweller in the roads, streets, alleys or· room."

Read in the light of the three sections of the statute here referred to, the complaint and warrant obviously attempt to charge one offense or numerous offenses under all three. It takes "road," "streets," "alleys" and "rooms" from sec. 7, "suit case," "trunk" and "other container" from sec. 31 and the search and seizure clause from sec. 9. The act prohibited by sec. 31 and pertaining to suit cases, trunks and other containers is a distinct substantive offense, and is not alone proof nor evidence of unlawful keeping, offering, storing or selling. Nor is possession of intoxicating liquors in a suit case, trunk or other container always an offense or evidence of guilt. It depends upon the quantity, the presence or

absence of a label, the place and other circumstances. The legislature evidently did not conceive the possibility of the manufacture, sale, etc. of liquors in a suit case, trunk or other container, or occupancy of such a thing, as a bar-room with all of its fixtures and paraphernalia, for it made no provision for warrants for search thereof. To charge an offense under sec. 7, it is unnecessary to mention any suit case, trunk or other container. It suffices to charge the having, keeping, using of, or permission to use intoxicating liquors in any of the forbidden places.

From the terms of the complaint and warrant, it is manifest that the officers proceeded under the misapprehension of law that characterized the procedure, and led to erroneous results in *State* v. *Sixo,* 77 W. Va. 243 87 S. E. 267. In that case, so much of sec. 31 of ch. 7 of the Acts of 1915, as made the mere possession of intoxicating liquor "conclusive evidence of unlawful keeping, storing and selling," was declared to be unconsitutional. It was also held here that the mere possession of such liquors properly labeled is not *prima facie* evidence of guilt of an offense under the statute. This necessarily means that the legislative act not forbidding the carrying for personal use, of two quarts of liquor or less, without a label, permits it by implication, and also the carrying of a larger quantity for such use, if properly labeled. Sec. 7 of the Act likewise impliedly permits a citizen to keep liquors in his home for his personal use. When this proceeding took place, the impression that a citizen could not carry along a highway or elsewhere, liquors in any quantity, for his personal use, in his pocket, or in a package, or hand-bag or otherwise, prevailed extensively in Monongalia County. Just what the very broad language of sec. 7 of the Act as amended means, it is not necessary to inquire, but it certainly does not deny to a citizen the right to carry along a highway to his home, what he is allowed to keep there. Its terms import no such intention. A plain purpose is to exclude the deposit or maintenance and use of liquors from public places and places to which the public resort. Whether it goes beyond this, there is no occasion now to inquire; but it obviously does not forbid transportation in a lawful manner, of liquors for personal

use in the home, over the public highways, or in places not included in the enumeration made by the statute, and there are many of them.

To charge an offense under sec. 31, it would be necessary only to aver the carrying of more than one-half of one gallon of intoxicating liquors into the State, or from one place to another within the State, in a suit case, trunk or other container, without the prescribed label. To institute a proceeding under sec. 9, the affidavit should charge the manufacture, sale, offering, keeping or storing for sale or barter or all of such acts, in a certain house, building or other place therein described. The complaint must name the place and the warrant must command search of that place, not such places as the officer executing it may deem liable to search.

The effort to formulate a general charge under all three sections has resulted in failure to make one under any of them. It is not averred that Emsweller or any other certain person had manufactured, sold, offered, exposed, kept or stored for sale or barter, any liquors. The charge is that some of these numerous unlawful things had been done in a suit case, trunk or other container in his possession, but not that he did them there or elsewhere, and he might lawfully have had such liquors in such a container in a road, street, alley or room. Moreover, the complaint did not pray for the arrest of Emsweller or any other certain person, nor does the warrant command such an arrest. The complaint sought a warrant to search a suit case, trunk or other container and the arrest of parties and persons found therein. It was identified as one in the possession of Emsweller, but no road, street, alley or room was named. As to them it was general, going to all the roads, streets, alleys and rooms in Monongalia County. Departing from it, the warrant commanded search of some room not identified nor in any way indicated, and the arrest of persons found therein. Emsweller's arrest was incident to an indefinite search. The return of the officer shows it was. To charge him under sec. 9, a complaint specifying the house, building or place was necessary. Neither the complaint nor the warrant pointed out any.

No court has power or jurisdiction to convict upon facts

that do not constitute an offense. As to power to determine, upon a writ of *habeas corpus* or otherwise, the existence or non-existence of an offense in the acts charged, there is no doubt a distinction between superior and inferior courts, on account of the presumption in favor of jurisdiction in the former and against it in the latter. But, if the record of a court of either class discloses the facts and the acts upon which the prosecution or judgment rests do not constitute an offense, there is no power to prosecute, in the one instance, and the judgment is necessarily void in the other. Want of jurisdiction in such cases is firmly asserted in *State ex rel. Morley* v. *Godfrey, Mayor,* 54 W. Va. 54 and *Judy* v. *Lashley,* 50 W. Va. 628. That sustains *habeas corpus* as well as prohibition. Church, Habeas Corpus, sec. 351. ''In imprisonment for criminal offenses the court can act upon it in only one of three manners: 1. If it appears clearly that the fact for which the party is committed is no crime; or that it is a crime, but he is committed for it by a person who has no jurisdiction, the court discharges. 2. If doubtful whether a crime or not, or whether the party be committed by a competent jurisdiction; or if it appears to be a crime, but a bailable one, the court bails him. 3. If an offense is not bailable, and committed by a competent jurisdiction, the court remands or commits him.'' Wilmot's Opinion, p. 106; Hurd, Habeas Corpus, 2 Ed., 325.

The common law jurisdiction by *habeas corpus* in cases of commitment by justices of the peace by way of execution, commitments under conviction, not merely to await indictment, was very broad. ''The power of a justice of the peace is in restraint of the common law, and in abundance of instances is a tacit repeal of the famous clause in the great charter, that a man should be tried by his equals, which also was the common law of the land long before the great charter, even from time immemorial, beyond the date of histories and records. Therefore, generally, nothing shall be presumed in favor of the office of a justice of the peace, but the intendment will be against it. * * * * Therefore, where a trial by jury is dispensed withal, yet he must proceed, nevertheless, according to the course of the common law, in trials

by juries, and consider himself only as constituted in the place both of judge and jury. Therefore there must be an information or charge against the person, then he must be summoned or have notice of such charge, and have an opportunity to make his defence, and the evidence against him must be such as the common law approves of, unless the statute specially directeth otherwise; then if the person is found guilty, there must be a conviction, judgment and execution, all according to the course of the common law, directed and influenced by the special authority given by the statute; and in the conclusion there must be a record of the whole proceedings, wherein the justice must set forth the particular manner and circumstances, so as if he shall be called to account for the same by a superior court, it may appear that he hath conformed to the law and not exceeded the bounds prescribed to his jurisdiction." 1 Burns' Jus. 409, quoted in Hurd, Hab. Cor., 400. "In describing the offence, a mere compliance with the terms of the statute will not suffice, for if a magistrate merely states the facts of the offence in the language of the act, when the evidence does not warrant the conclusions, he subjects himself to a criminal information. The particular circumstances which conduce the opinion of the magistrate must be set forth, and not the mere result or conclusion from them. * * * * That the design of the conviction is not merely to record the fact of the judgment, but to show that the proceedings required by justice had been regularly observed and the sentence legally supported by evidence, is everywhere evinced by the language and sentiments of the ablest judges from the time of Lord Holt, who himself, on all occasions, regarded the obligation of recording the whole proceeding as a necessary counterpoise against the liability to error or misapplication to which a private and discretionary tribunal is naturally exposed." Paley and Hulton on Convictions and Nun and Walsh on Justices, quoted in Hurd. Hab. Cor., 401, 403.

All of this proceeded upon the legal presumption against the jurisdiction of an inferior court. It had to be affirmatively shown at every step; but, when shown, there was a presumption in favor of proper exercise thereof. As evidence

of guilt was essential to a conviction, even though the process was perfect and the offense alleged was within the jurisdiction of the court and sufficiently charged, the court, on a writ of *habeas corpus,* looked to the record for findings of the facts constituting the offense, the specific acts proved, in the opinion of the magistrate; and, if the record did not disclose them, or enough of them to constitute the offense, it seems the prisoner was deemed not to have been legally convicted. Whether it was the practice to discharge him, when the court found this state of the record, but also found evidence of guilt, or to remand him for proper procedure, it is not necessary to inquire.

Our statute, Code, ch. 50, secs. 176 to 179, inclusive, seems impliedly to have eliminated some of the formality required by the ancient law. Its prescription of the docket to be kept by justices and the contents thereof, omits the requirement of any recital of facts found. As to the judgment, it requires no more than that it shall be "stated," with the items of costs included therein. Sec. 182 of the chapter makes the docket or a transcript thereof evidence of the judgment or other proceeding, but declares it "shall not be conclusive if errors or omissions be shown." The obvious result of this legislation is that the judgment of a justice entered in his docket proves the jurisdictional facts, in the absence of proof of lack thereof. In other words, it is *prima facie* evidence, and the judgment is not void for want of a full recital thereof. But, whether recited or not, the judgment is open to contradiction and impeachment on questions of fact going to the jurisdiction. In this respect, it differs from the judgment of a superior court, which is conclusive, unless the lack of jurisdiction appears on its face, or by matter of record, not contradictory of the judgment itself. One jurisdictional question is, whether there was any evidence of the perpetration of acts constituting an offense. If there was, the justice had jurisdiction to determine its sufficiency and to resolve doubts in cases of conflict; and the case, as well as the prisoner, was within his power and jurisdiction. When a prisoner is within the jurisdiction of a court in all respects, he is not illegally deprived of his liberty. For mere errors in procedure or

judgment, he is not entitled to a discharge, and, for correction thereof, he is limited to an appeal, writ of error or certiorari; perhaps in this State, to an appeal only, in the case of an erroneous judgment of a justice.

For an offense of which a justice has jurisdiction, committed in his presence or the presence of a constable, an arrest may be made without a warrant. Code, ch. 50, sec. 221, ser. sec. 2775. In other cases, there must be a warrant and it can be issued only on information under oath of a credible person; and it must describe the offense alleged to have been committed, "as heretofore required in such cases by law." Code, ch. 50, sec. 223, ser. sec. 2777. *State* v. *Harr et al.*, decided at this term. A search warrant must also be founded upon a showing of probable cause, supported by an oath of affirmation, and it must particularly describe the place to be searched. Constitution, Article III, sec. 6; Acts, 1913, ch. 13, sec. 9; Code, ch. 155, secs. 1 and 2, ser. secs. 5513, 5514.

Examined in the light of these requirements, the complaint and warrant were utterly insufficient, as has been indicated. There is no direct allegation of any offense by Emsweller. "So it must appear  *  *  *  * that the offence was directly charged, and not by implication, and contained in express terms every ingredient necessary to constitute the crime described by the statute." Hurd, Hab. Cor. 2 Ed., pp. 401 and 102; *R.* v. *Thompson,* 2 T. R. 18; *R.* v. *Pearce,* 9 East. 358; *R.* v. *Davis,* 6 T. R. 171; *Ardry* v. *Hoole,* Cowp. 825. He was not liable to arrest as an inmate of any place searchable under the warrant, as the officer's return shows he was arrested, because the warrant, as a search warrant, was void by both the statute and the constitution, for lack of description of any place to be searched. There is no charge that he had carried intoxicating liquors in such manner as to constitute an offense under sec. 31 of ch. 13, Acts, 1913 added by ch. 7, Acts, 1915; nor that he had, kept or used such liquors in any of the forbidden places. If the warrant had sufficiently charged any offense, his plea of guilty would conclude him, but such a plea to a void charge, did not authorize a judgment of conviction. The fact is that the liquor was found in Emsweller's pockets. He had four pints of beer and Jenkins, arrested with him,

had three, which they say they were carrying to their homes for personal use.   There was no proof of any of the circumstances before the justice, but the affidavits filed in support of the writ state them as here given and they are not contradicted by the officer who made the arrest and seized the liquor, or any other person.

As the warrant is void for lack of allegation of facts constituting an offense, and the conviction is not shown to have been for an offense alleged to have been committed in the presence of the justice or constable, the judgment is illegal and void.   If, under such circumstances, the prisoner could be remanded for proper prosecution, on evidence of guilt, it would not be proper to remand in this case, because there is no such evidence.   The prisoner could lawfully carry four pints of intoxicating liquor to his home for his personal use, without a label.

Reversal of the judgment refusing to discharge the prisoner and remanding him, and his discharge here, in the exercise of appellate authority to do what the trial court should have done, terminates the controversy involved in Emsweller's writ of error to the judgment refusing an appeal, and reduces that proceeding to a moot case, wherefore that writ of error will be dismissed.

But it is necessary to determine whether the court erred in refusing to grant Jenkins an appeal.

The judgment was rendered against him, June 23, 1915. He filed his petition in the circuit court, praying for an appeal, July 20, 1915.   In it, he protested his innocence of any offense, charged error in the procedure, illegality of his conviction and refusal of an appeal by the justice.   Proceeding upon the theory of right to take an appeal at the hands of the justice, within ten days after the judgment, and, on a showing of good cause for failure so to obtain it, to have it granted by the circuit court or the judge thereof in vacation, within ninety days, he alleged an application therefor to the justice within ten days and his refusal to grant it.   Resistance by the prosecuting attorney, to the application to the court, was permitted, and he denied the existence of the cause shown for failure to obtain the appeal from the justice.   In support

of this denial, he filed the affidavits of the justice and another person, saying no such demand had been made. The Attorney General argues that an appeal from the judgment of a justice can be demanded only at the rendition of the judgment.

The statute allows an appeal in any criminal case, under certain regulations, and does not, in terms, limit the right as to time, as it does in civil cases. Code, ch. 50, sec. 230, ser. sec. 2785. Whether the time limitation provided in civil cases, Code, ch. 50, secs. 167 and 174, ser. secs. 2721 and 2728, is to be applied on the principle of analogy, it is not necessary to decide; but there is no manifestation of legislative intent to require the demand for an appeal to be made at the very hour or day of the rendition of the judgment. As time for applications for appellate relief is allowed in all other cases, denial of it in those instances in which the liberty of a citizen is involved, would be manifestly inconsistent with established public policy as well as reason. On the face of the statute, the right of appeal in such cases is unlimited and it is a constitutional right which the legislature may regulate, but not wholly deny, nor unduly burden. *Vetock* v. *Hufford,* 74 W. Va. 785. A statute of Virginia somewhat similar to ours has been construed as requiring an immediate demand for an appeal, *Combs* v. *Com.,* 95 Va. 88, but the reasoning of the court in that case does not convince us of the correctness of the conclusion.

We are of the opinion that an appeal in such a case, demanded within ten days, a clearly reasonable period, should be granted.

On the issue as to whether a demand was made within that time, we think the doubt should have been resolved in favor of the petitioner. The justice and W. E. Cobun, who deny that the application was made, both admit the presence of the fathers of the two boys at the justice's office on July 1, 1915, and a demand by them for a transcript of the docket. They also admit that the justice did not make the transcript, and that he promised to make it on a later day, if he should have time to do so. The justice admits these men returned on July 3, 1915, Saturday, and he asked them to wait until Monday,

and that the interview ended in a threat of coercion by them and an absolute refusal on his part to make it, until compelled to do so. Later, July 5, or 6th, they returned with an attorney and demanded a jury trial. To the oaths of Samuel Emsweller and the petitioner that the application was made, these circumstances showing efforts to obtain some sort of relief are added by the admission of the justice and witness Cobun. A doubt about an application for an appeal in a case involving liberty should be resolved in favor of the applicant. As has been noted, the right is a high one guaranteed by the constitution of the State, and is given as a matter of right. To obtain it, no bond or recognizance is necessary, unless the prisoner is to be liberated, during the pendency of the appeal. *Vetock* v. *Hufford,* cited. His desire to avail himself of it is shown by his petition, supported by his oath. It is resisted by the justice on the ground of lack of an application therefor to him. The prisoner and another witness swear the application was made. A doubt so created ought not to be allowed to defeat this high and sacred right.

A plea of guilty to a warrant sufficiently charging an offense, might preclude right to an appeal. *City of Edina* v. *Beck,* 47 Mo. 234; *Philot* v. *State,* 65 N. H. 250. But a plea of guilty to a void warrant stating no facts constituting an offense, has no such effect. 12 Cyc. 801.

For the reasons stated the judgment of the circuit court refusing the appeal asked for July 20, 1915, will be reversed, the appeal prayed for in the petition allowed and the case remanded with direction to admit the prisoner to bail, on a good and sufficient recognizance, conditioned for his appearance for trial of the case on the appeal, if he shall demand it.

*Writ dismissed, reversed and remanded.*