## Richmond

LEWIS DICKERSON AND JOHN S. HAWKINS V. COMMONWEALTH
OF VIRGINIA.

March 22, 1934.

Present, Campbell, C. J., and Epes, Hudgins, Gregory and
Browning, JJ.

The opinion states the case.

*William B. Cocke* and *Thomas H. Howerton,* for the plaintiffs in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

Epes, J., delivered the opinion of the court.

Lewis Dickerson and John S. Hawkins were arrested and tried before Hon. William D. Prince, trial justice of Sussex county, on a warrant charging that they "did on the 24th day of August, 1933, unlawfully have in possession a still capable of manufacturing ardent spirits." When arraigned before the trial justice on August 28, 1933, they both pleaded guilty. The trial justice heard the testimony of one of the witnesses who was present when the accused were discovered at the still; and upon their plea of guilty and the testimony of these witnesses found both of the accused guilty as charged, and sentenced each of them to serve sixty days in jail and to pay a fine of $50 and costs.

The accused were not represented by counsel at the trial. However, after sentence had been pronounced, but before the trial justice had left the court room, Mr. Thomas H. Howerton, an attorney, appeared in the court room,

advised the trial justice that he had just been employed by the father of one of the young men to defend them but had not had time to examine the facts of the case, and asked that the case be reopened. Mr. Howerton testifies that he at this time also asked the trial justice to permit him to withdraw the pleas of "guilty" and enter pleas of "not guilty" for both of the accused. The trial justice in his testimony does not make mention of this fact, but we do not understand him to deny it. The trial justice refused to reopen the case.

A little later, after the trial justice had adjourned court and left the court room, Mr. Howerton again spoke to him and asked that the accused be granted a new trial, and that they be permitted to withdraw their pleas of guilty and enter pleas of not guilty. This request was refused. Thereupon, Mr. Howerton asked the trial justice to suspend the execution of sentence until the 4th of September. This request was granted.

On September 4th the accused and their counsel appeared before the trial justice and asked him to suspend the jail sentences, presenting to him a number of letters and a petition signed by a number of people of the community asking that this be done. The trial justice refused to grant this request, stating that "the matter was now out of his hands and that the matter could come up *de novo* in the circuit court." An appeal to the circuit court was then allowed to the accused by the trial justice and they were recognized for their appearance before that court.

When the case was called in the circuit court the attorney for the Commonwealth moved the court to dismiss the appeal as having been improvidently awarded, first, because both the accused had pleaded guilty before the trial justice and had been convicted on their plea of guilty, and second, because before any motion for appeal was made they had moved the trial justice to suspend the jail sentence, which motion had been denied.

The circuit court being of the opinion, as it recited in

its order, that the evidence introduced before it showed that "the pleas of guilty * * * were deliberately tendered by the defendants, and that their conviction as aforesaid was attended with no apparent injustice;" and relying upon the case of *Cooper* v. *Town of Appalachia,* 145 Va. 861, 134 S. E. 591, held that they had waived the right to an appeal by pleading guilty, and dismissed the appeal as having been improvidently awarded.

From the judgment of the circuit court the defendants in error have been granted a writ of error. They assign several errors, but the only one which has sufficient merit in it to require consideration is that the court erred in holding that the plea of guilty entered by the defendants on the trial before the trial justice operated as a waiver of, or bar to, their right to appeal to the circuit court.

On the motion to dismiss the court heard testimony as to the circumstances under which the pleas of guilty were entered before the trial justice, and also the testimony of the accused on one side and of the sheriff on the other bearing upon the question of their guilt or innocence of the offense charged.

The trial justice testified that he read the warrant to the accused, asked them "as to their pleas," but that he did not explain to them "the nature and effect of the plea of guilty," or "say anything to them as to the conseqences of the plea of guilty."

He further testified that the accused said nothing "to the effect that they did not know the meaning of the language used in the warrant."

The accused were young men of twenty-five and twenty-eight years of age, respectively, both have been to school and have a fair primary education; and when the warrant was read to them by the circuit court each stated that *at that time* he understood what the language meant. But each of them testified that at the time he was tried before the trial justice he did not understand "the words and phrases" contained in the warrant which was read to them or that by his plea of guilty he was pleading guilty

to having possession of the still; and that he meant by his plea of guilty only that he was at or near the still when the officers raided it.

The accused testified that they did not own the still, were not in possession of it, and had never had anything to do with it. The account given by both of the accused as to how they happened to be at the still is this: On August 23d there had been a heavy storm, and on the morning of the 24th the father of Lewis Dickerson asked the two accused to go around his pasture fence and repair it. As they were going around the fence, they saw this still in the woods close to the fence, and out of curiosity stopped to look it over. While they were there looking it over the sheriff raided the still and Dickerson, becoming frightened, ran off, but stopped and returned when the officers hailed him.

The sheriff's account of what took place at the time of the raid is this: He had received information that this still was where it was found, and went to look for it. When he found it, it was not in operation, but there was a little fire under it and a quantity of cider and some brandy near the still. Dickerson and Hawkins were at the still when he got there. Hawkins had a funnel in his hand and appeared to be in the act of pouring something into the still. Just as he got to the still, Dickerson became aware of his approach and ran off, but stopped and returned when he hailed him. One of the officers stated to the defendant (which one he does not say), "You ought to be ashamed of yourself," and Hawkins replied, "Yes, I am ashamed to be caught here."

T. F. Bain, who was introduced by the accused, testified that a few days before the trial he saw the sheriff of the county who told him in the course of conversation that "he did not think that counsel would do them (the accused) any good since they were caught at the still, and that it was his opinion that, if they would plead guilty, it would be better or easier for them; and that he told both Dickerson and Hawkins what the sheriff had said, and

they said they would plead guilty." The accused, Dickerson, adds that Bain saw the sheriff at his request, and told him what the sheriff had said.

The sheriff testified that he did not recall having told Bain that it would be better or easier for the accused if they plead guilty; but "that Mr. Bain mentioned something about a cow having been near the still and asked him * * * if the boys told that they were looking for the cow would it be a good excuse for being caught at the still, and that he told him he did not think so." Bain was not recalled and did not deny this statement.

In *Cooper* v. *Town of Appalachia,* 145 Va. 861, 134 S. E. 591, it was held that ordinarily a plea of guilty entered by the accused upon an appeal in the justice's court is a waiver of, or bar to, his right to appeal from the judgment of the justice; but that before accepting a plea of guilty as a waiver of, or bar to, the accused's right of appeal the court should see that it was made by a person of competent intelligence, freely and voluntarily, and with a full understanding of its nature and effect and of the facts on which it is founded.

The evidence is insufficient to show that the circuit court erred in holding that this case falls within the general rule laid down in *Cooper* v. *Town of Appalachia, i. e.,* that a plea of guilty is a waiver of, or bar to, the right of the accused to appeal from the judgment of a justice; and if the rule in that case is to be followed the judgment of the circuit court should be sustained.

■ However, upon re-examination of this subject we are of opinion that the rule laid down in *Cooper* v. *Town of Appalachia* should not be adhered to; and that under the statutes of Virginia relating to appeals from convictions from a justice of the peace or a trial justice neither a plea of guilty nor any of the motions which were made by or on behalf of the accused after they had been sentenced should be held to appear as a waiver of, or a bar to, the right of the accused to appeal.

Chapter 352, Acts 1930, page 783, amending and re-en-

acting section 4988, relating to trial justices in counties having a population of 6,000 or more provides with reference to appeals in criminal cases as follows:

Subsection 5, paragraph (d). * * * "The said trial justice shall have jurisdiction of all misdemeanors arising under the prohibition laws of the Commonwealth, with an appeal of right to the circuit court as provided for by the general law with reference to appeals."

Subsection 7. "All the provisions of law now in force, or which may be hereafter enacted governing * * * appeals in both civil and criminal cases cognizable by justices of the peace of counties not affected by this act shall apply in like manner to cases tried before the trial justices appointed hereunder, unless otherwise provided herein." * * *

Practically the same provisions are contained in chapter 366, Act 1930, p. 800, relating to trial justices in counties having an area of from 210 to 250 square miles.

Section 4989 provides that, "Any person convicted by a justice under the provisions of sections forty-nine hundred and eighty-seven and forty-nine hundred and eighty-eight shall have the right, at any time within ten days from such conviction, to appeal to the circuit court of the county or corporation or hustings court of the corporation, as the case may be." * * *   (Section 4987 is the section referred to conferring criminal jurisdiction upon justices of the peace.)

Section 4990 provides: "The appeal shall be tried without formal pleadings in writing, and the accused shall be entitled to trial by a jury in the same manner as if he had been indicted for the offense in said court."

■ Under these statutory provisions upon an appeal from the judgment of a justice or trial justice the case is to be tried *de novo* as if it were being tried upon an information or indictment brought before the circuit court in the first instance; that is, the appeal is in effect a statutory grant of a new trial to the accused to be had before the circuit court. *Ossa* v. *Appalachia,* 137 Va. 795, 119 S.

E. 51; *Postal Telegraph-Cable Co.* v. *Charlottesville,* 126 Va. 800, 101 S. E. 357.

The language of the Virginia statutes above quoted is that "any person convicted" by a justice of the peace or trial justice shall have a right of appeal to the circuit court, that is, a right to a new trial before the circuit court. It neither expressly nor by implication limits the right of appeal to persons convicted upon a plea of guilty or makes a plea of not guilty a waiver of, or bar to, the right of appeal given. And the weight of authority, and we think the better rule, is to the effect that under statutes such as the Virginia statutes a plea of guilty entered before a justice of the peace does not operate to waive or bar the right of the accused to an appeal. *State* v. *Little,* 42 Vt. 430; *Neblett* v. *State,* 75 Miss. 105, 21 So. 799; *Jenkins* v. *State,* 98 Miss. 717, 54 So. 158; *Holtman* v. *Com.,* 129 Ky. 710, 112 S. W. 851; *State* v. *Funderburk,* 130 S. C. 352, 126 S. E. 140; *People* v. *Richmond,* 57 Mich. 399, 24 N. W. 124; *Thomas* v. *Montcalm Circuit Judge,* 228 Mich. 44, 199 N. W. 610; *Yager* v. *State,* 190 Ind. 550, 131 N. E. 42; *Weaver* v. *Kimball, Judge,* 59 Utah 72, 202 Pac. 9.

The rule laid down in *Cooper* v. *Town of Appalachia* seems to be the rule in Missouri, Arkansas and New Hampshire, and perhaps in West Virginia, though the statements in one of the West Virginia cases cited are pure *dicta* and in the other case the point decided was that under the facts of that case the plea of guilty was not a bar to an appeal. *City of Edina* v. *Beck,* 47 Mo. App. 234; *Stokes* v. *State,* 122 Ark. 56, 182 S. W. 521; *Philpots* v. *State,* 65 N. H. 250, 20 Atl. 955; *State* v. *Emsweller (State* v. *Jenkins),* 78 W. Va. 214, 88 S. E. 787 *(dictum)*; *Nicely* v. *Butcher,* 81 W. Va. 247, 94 S. E. 147; *State* v. *Haller,* 23 Mo. App. 460.

Indiana is sometimes cited as holding in accordance with the rule stated in *Cooper* v. *Appalachia,* but the cases do not bear this out.

In *Holsclaw* v. *State,* 114 Ind. 506, 17 N. E. 112, and *Orear* v. *State,* 22 Ind. App. 553, 53 N. E. 249, the statute

(Rev. St. Ind. 1881, section 1643) under consideration provided that, "Any prisoner against whom any punishment is adjudged may appeal to the criminal court * * * within ten days after trial * * * and such appeal shall stay all proceedings." The court in this case held that this statute only allowed an appeal where there had been a trial; that where there is a judgment upon a plea of guilty there is no appeal; and that therefore the statute did not give the accused a right of appeal where he pleaded guilty. See, also, *State* v. *Gardner,* 8 Ind. App. 440, 35 N. E. 915. In 1905, when the Indiana code was revised, the above statute was amended by substituting for the words "within ten days after trial" the words "within ten days after such judgment" (Acts 1905, ch. 169, section 81); and thereupon the Indiana court held, in *Yager* v. *State,* 190 Ind. 550, 131 N. E. 42, that under the statute as amended the accused had a right of appeal though he had pleaded guilty in the justice's court.

The rule applied in *Cooper* v. *Appalachia* is the rule that is applied generally in criminal cases where an appeal from or writ of error to a judgment of a court of record is provided for. But it is a rule which is not well adapted for application where an appeal is provided for from the judgment of a court not of record. In those courts trials are usually conducted summarily and with much informality, and often, if not in most of the cases tried by them, the accused is without benefit of advice of counsel. The appeal from the judgments of such courts is in effect a statutory grant of a new trial before the appellate court, and the same reasons do not exist for applying the rule that exist where the appeal is to be heard and determined upon the record made in the lower court.

The rule in *Cooper* v. *Appalachia,* when read in connection with the decision in *Nicely* v. *Butcher,* 81 W. Va. 247, 94 S. E. 147, which is cited with apparent approval, in effect, makes the right of appeal, where there has been a plea of guilty, depend upon a finding by the circuit court

that the justice or trial justice was guilty of judicial misconduct or committed error in permiting a plea of guilty to be filed, and contemplates that, where the question is raised, there shall be a preliminary trial before the circuit court upon parol testimony to determine whether the justice or trial justice was guilty of judicial misconduct or committed error in accepting the plea.

■■ This is foreign to the spirit and intent of the Virginia statutes relating to appeals from justices of the peace and trial justices. The spirit and intent of these statutes is to grant an appeal, in the nature of a new trial, as of right without inquiry as to whether the justice or trial justice has committed error or not. And considering the nature and procedure of these courts it seems to us to be an undesirable practice to make appeals therefrom depend, in any case, upon the establishment by parol testimony that the justice has been guilty of judicial misconduct or has committed error. Where the right to an appeal is predicated upon the commission of error by the court of original jurisdiction, that error should appear of record.

It seems to us to be clear that the intent of the Virginia statutes is to afford the accused, by giving him a new trial before the circuit court on appeal, the opportunity to have every advantage which would have been his had he been tried originally in the circuit court. Since the statute giving an appeal to "any person convicted by a justice" was originally enacted, statutes have been passed which empower circuit courts to suspend jail sentences, where imposed, in many misdemeanor cases of which justices of the peace and trial justices have concurrent jurisdiction. However, a corresponding power has not been conferred upon justices of the peace or trial justices. The result is that if the rule of *Cooper* v. *Appalachia* be adhered to, in many cases a plea of guilty entered by an accused upon a trial before a justice or trial justice will weigh more heavily against him than a plea of guilty to the same charge would do if entered by him upon a trial before a

circuit court, because it effectively cuts off any opportunity of his having a jail sentence, if imposed, suspended however much his case may merit a suspension of it.

The judgment of the circuit court will be reversed, the appeal of the plaintiffs in error reinstated, and the case remanded to the circuit court for trial *de novo* with the right to the accused to withdraw their pleas of guilty if they be so advised.

*Reversed and remanded.*

GREGORY, J., dissenting:

I disagree with the conclusion reached. The effect of the majority opinion is that an accused may appear before a justice of the peace, plead guilty in a misdemeanor case and receive a sentence there, and if he thinks he will fare better in the circuit court, he can go there by appeal and take his chances on whether he will receive a lighter sentence than he received before the justice of the peace. An accused should not be permitted to trifle with the court in any such manner. Our laws contemplate that a justice of the peace, upon a plea of guilty in certain cases, has the power to finally determine those cases, thus eliminating the unnecessary additional costs to the Commonwealth made necessary by appeals. The accused is certainly not entitled to "two bites at the cherry."

The rule applied in *Cooper* v. *Town of Appalachia* should be followed here. It is reasonable and just, and in my judgment sustained by excellent reason.

The argument that accused stands a chance of having his jail sentence suspended in the circuit court but has no such chance before a justice of the peace because the justice has no such power is not a valid one. An accused has no right to a suspension of jail sentence in any court. It is granted only as a matter of grace in certain cases by the circuit court, in the exercise of a sound discretion.