# Richmond

## Clyde Swift v. Commonwealth of Virginia.

October 14, 1957.

Record No. 4725.

Present, All the Justices.

The opinion states the case.

*William P. Sheffield,* for the plaintiff in error.

*John W. Knowles, Assistant Attorney General (J. Lindsay Almond, Jr., Attorney General,* on brief), for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

This writ of error brings under review three judgments, entered in one trial on three separate verdicts finding Clyde Swift, the accused, guilty of selling, on May 1, 2 and 3, 1956, alcoholic beverages in violation of Code, § 4-58, and fixing his punishment at confinement in jail for 60 days and a fine of $100.00 on each charge.

There is no substantial conflict in the evidence, which may be summarized as follows: M. W. Prilliman and S. L. Simmons, investigators employed by the Virginia Alcoholic Beverage Control Board, went to Damascus, Washington county, Virginia, to investigate in that vicinity reports, or complaints, the Board had received of violations of the statute prohibiting the sale of alcoholic beverages. Immediately upon their arrival in Damascus, the two investigators informed Orville McNish, a deputy sheriff, of their identity and of their objective. During their four-day stay in Damascus they conferred daily with the deputy sheriff.

The investigators stayed at Sportsman Motel and posed as "fishermen from West Virginia." They obtained fishing licenses and donned fishing regalia. They inquired of Joe Colvin and Wilma Doss, two boys referred to as "Joe" and "Bud," where they could buy whiskey. On May 1, 1956, the boys took the investigators to Clyde Swift's home where the four of them entered the kitchen and Simmons "asked for some whiskey." Swift asked the boys whether

the two investigators were "all right" and upon being assured they were, he went "to a drawer in the kitchen" where several bottles of whiskey bearing A.B.C. stamps were stored, picked up a pint of "Kentucky River" whiskey and sold it to Simmons for $3.00. Prilliman testified that there was more whiskey stacked up "about two deep" in the drawer.

On May 2, 1956, at approximately 10:45 p. m., Simmons and Prilliman, accompanied by one of the boys, returned to Swift's home, on which occasion Simmons and the boy entered the house. Again they asked for whiskey and again Swift asked the local resident if he knew Simmons. Upon receiving an affirmative reply, Swift asked what brand was desired and brought out a pint of "Crab Orchard" whiskey which he sold to Simmons for $3.00.

On May 3, 1956, the two investigators returned to Swift's home between 10:45 and 11:00 p. m., accompanied by "Bud." Prilliman and "Bud" went to the back door of the house and asked Swift for some whiskey; Swift replied, "all right," and sold the investigator a pint of "Tom Moore" whiskey for $3.00.

The accused did not take the stand in his own behalf, nor was either of the boys introduced as a witness by the Commonwealth or the accused.

█ The first contention of the accused is that the judgments are fatally defective because the Commonwealth failed to prove that he was not licensed to sell alcoholic beverages.

This contention is not supported by the record. Both Simmons and Prilliman testified, without objection, that the accused was not licensed to sell intoxicating beverages. When Prilliman was on the stand he was asked:

"Q. Is Clyde Swift duly licensed to sell alcoholic beverages?

"A. No, sir, he is not.

"The Court: Have you any objections, Mr. Sheffield?

"Mr. Sheffield [attorney for accused]: No, sir, Your Honor."

█ The accused's second contention is that the trial court erred in permitting the investigators to testify, over his objection, that they had been sent to Damascus to investigate complaints made to the Virginia Alcoholic Beverage Control Board that he was selling whiskey unlawfully.

The record does not support this contention. Both Prilliman and Simmons testified that they were employed by the Virginia Alcoholic Beverage Control Board, and charged with the duty of investigating

illegal sales of whiskey. Accused objected to that part of Prilliman's testimony that revealed he was sent to Damascus by his superiors to investigate complaints made to the Board of the illegal sale of alcoholic beverages in that area. Simmons' testimony to the same effect was admitted in evidence without objection. Neither investigator mentioned the name of the accused or any other person as being the subject of the complaints. This fact clearly distinguishes the case from the facts in *Sturgis* v. *Commonwealth*, 197 Va. 264, 88 S. E. 2d 919, upon which the accused relies. In that case the trial court permitted the officer to testify that he had been informed that "Purnell Sturgis [the defendant] was hauling some illegal whiskey in the vicinity of Painter," in Accomack county. We held that such testimony was inadmissible and prejudicial because it informed the jury that the officer had been told by other persons that the defendant was, or had been, engaged in the very illegal act for which he was being tried.

The statements made by the investigators in the instant case merely show why they were in Damascus, and that they were posing as "fishermen" in order to conceal from the general public their true identity. Under these circumstances the admission of this testimony is not reversible error. However, such testimony did not justify that part of the argument of the Commonwealth's Attorney to the jury wherein he said: "* * * The whole situation came about because the good citizens were becoming blighted and they wanted someone to come and stop the illegal liquor traffic in their town. * * * The whole thing came about because the citizens wanted their town cleaned up." But since no objection was made to this line of argument, the question is not properly before this Court for consideration.

The accused also contends that the "Court erred in not, of its own motion, declaring a mistrial because of the improper remarks of the Commonwealth Attorney in referring to the defendant as a 'rat' and 'snake' and this was not cured by the subsequent remarks of the Court."

This assignment of error is based on that part of the argument of the Commonwealth's Attorney wherein he said: "The only argument possible for Mr. Sheffield to take up was that they [the investigators] misbehaved. They were under Mr. McNish. They are not on trial. Sometimes they have to go out to catch rats and snakes and get in rats' nests and snake pits."

On the accused's objection to this argument, the court instructed the jury to disregard the statements of the Commonwealth's Attorney

about rats and snakes, and to base their verdicts on the law and the evidence. The accused made no further objection to the argument and did not move the court to declare a mistrial. This contention is without merit.

■ The accused's next contention is that the trial court committed reversible error in its refusal to give instructions on entrapment as requested by him.

" 'Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer.' " *Falden* v. *Commonwealth*, 167 Va. 549, 555, 189 S. E. 329, quoting from *Sorrells* v. *United States*, 287 U. S. 435, 53 S. Ct. 210, 77 L. ed. 413, 86 A. L. R. 249. In *Ossen* v. *Commonwealth*, 187 Va. 902, 911, 48 S. E. 2d 204, we quoted the above definition with approval, and said: "It is a general rule that where the criminal intent originates in the mind of the entrapping person and the accused is lured into the commission of a crime which he had otherwise no intention of committing in order to prosecute him therefor, no conviction may be had, though the committing of the act is not affected by any question of consent."

It is error to give an instruction, though correct as an abstract statement of law, unless there is sufficient evidence in the record to support it. The accused introduced no evidence tending to show that the investigators conceived or planned to procure the illegal sale of whiskey by one who would not otherwise have made the sale. The uncontradicted testimony is that upon asking two local boys where they could obtain whiskey, the investigators were directed or taken to the home of the accused. There the investigators in the performance of their duties ascertained that the accused was equipped, ready and willing to make illegal sales of whiskey. He took advantage of the opportunity offered by the investigators and without undue solicitation made illegal sales of whiskey to them. *Guthrie* v. *Commonwealth*, 171 Va. 461, 198 S. E. 481, 119 A. L. R. 683.

There being no evidence in the record tending to show that the investigators unduly induced or enticed the accused to make unlawful sales of whiskey, the trial court did not err in refusing to give instructions on entrapment.

■ The only other contention of the accused that merits discussion is that the court erred in refusing to give Instruction No. III, which is as follows:

"The Court instructs the Jury that the fact that a warrant has been issued against the accused is no evidence whatever of his guilt, and is not a matter you can consider or discuss in your deliberations."

We find no error in the refusal of the court to give this instruction. First, because it is misleading. It is elementary that the issuance of a warrant or the return of an indictment by a grand jury is not evidence of the guilt of the accused. However, such an instrument describes the offense that the Commonwealth alleges the accused has committed, and such charge must be considered by the jurors in determining whether the evidence proves the commission of the specific crime for which the accused is being tried. This fact is emphasized in Instruction No. V, given on the request of the accused, wherein it is said: "* * * And in this connection the Jury is instructed that it is never sufficient that the accused, upon speculative theory or conjecture, may be guilty; or that by the preponderance of the testimony his guilt is more probable than his innocence; for until his guilt has been proved beyond all reasonable doubt *in the precise and narrow terms as charged in the warrant,* the presumption of innocence still applies, and they must acquit him." (Italics supplied).

The only argument advanced by the accused in support of this contention is stated in his brief as follows: "The Court, in refusing Instruction III, erred in so doing in that it permitted the jury to consider the statements made in Warrant Number 2 alleging prior convictions, whereas, there was no evidence introduced on behalf of the Commonwealth to prove that the defendant had been previously convicted of illegally selling whiskey."

On the back of each of the original warrants was written the judgment of the trial justice, now county judge, finding the accused guilty, and imposing a fine of $50.00 and confinement in jail for 60 days. With these judgments written on the warrant it would have been reversible error to have permitted them to have been introduced in evidence and considered by the jury. *Gravely* v. *Deeds,* 185 Va. 662, 40 S. E. 2d 175; *Malouf* v. *Roanoke,* 177 Va. 846, 13 S. E. 2d 319; *Green* v. *Commonwealth,* 170 Va. 619, 195 S. E. 520; *Dickerson* v. *Commonwealth,* 162 Va. 787, 173 S. E. 543.

There is nothing in the record tending to show that the original warrants, or indeed copies thereof, were given to the jury. The trial court instructed them that: "You will be given three sheets of paper and will write three verdicts. Mark them the first, second and third cases." The verdicts were so marked, written and signed by the

foreman on three plain sheets of paper and returned in open court. The trial court's attention was not called to the fact that no evidence had been introduced in support of the charge made in one of the warrants that the accused had been previously convicted under the provisions of Code, § 4-58. It was not called upon to amend the warrant, nor was it asked to instruct the jury to disregard the statement in a copy of the warrant, if a copy was given to the jury. This ground of objection being made for the first time in this Court comes too late.

We find no reversible error in any of the rulings of the trial court, but in affirming the judgments we can not refrain from condemning the conduct of the investigators who, on cross examination, admitted that after each purchase of whiskey from the accused they drank out of the bottles and gave drinks, in their car and in their room at the motel, to two boys, one of whom was only 17 years of age. They bought "moonshine" whiskey intending to prosecute the seller for the illegal sale, but later found that the purchase had been made in Tennessee where they had no authority to operate. However, they brought the "moonshine" into Virginia and kept it in their room at the motel where they and others, with their consent, drank it. In addition, they drank with the two boys and a young woman while pleasure riding in and around Damascus. It may be, and doubtless is, necessary for investigators of the Alcoholic Beverage Control Board in obtaining evidence of the unlawful sales of intoxicating beverages to conceal their identity, and mingle on terms of familiarity with that element of the population accustomed to dealing with "bootleggers" or other persons engaged in the unlawful sale of intoxicating beverages. But this does not justify them in keeping and drinking "moonshine" whiskey, or in drinking and carousing with minors.

For the reasons stated the judgments of the trial court are affirmed.

*Affirmed.*