COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Lemons
          and Senior Judge Duff
Argued at Alexandria, Virginia


RICHARD DAVID FISHBACK

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1377-98-4          JUDGE CHARLES H. DUFF
                                        JUNE 15, 1999
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                   Carleton Penn, Judge Designate

          S. Jane Chittom, Appellate Counsel (Elwood
          Earl Sanders, Jr., Appellate Defender; Public
          Defender Commission, on briefs), for
          appellant.

          Eugene Murphy, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Richard David Fishback (appellant) was convicted in a jury

trial of one count of robbery, one count of use of a firearm

during the robbery, three counts of abduction, and three counts of

use of a firearm during the abductions.  Appellant contends that

the trial court erred by (1) finding the evidence sufficient to

prove that appellant abducted three people, (2) finding the

evidence sufficient to prove that he used a firearm during those

abductions, (3) refusing appellant's proffered instruction on

abduction, and (4) denying appellant's motion to suppress all

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

in-court identifications of him by witnesses who had been shown a photo array.  For the following reasons, we find no error and affirm the convictions.

Facts

At approximately 2:45 p.m. on January 7, 1997, Elaine Armentrout (Elaine) was working as a cashier at the Corner Store. Her husband, Johnnie Armentrout (Johnnie), and a customer, Robert Fogle, were also present in the store.  Elaine looked up from the counter when she heard a man say, "I'm not kidding."  She saw a man with a gun order Johnnie and Fogle to lie on the floor.  The man then walked to the counter, pointed his gun at Elaine and demanded money.  Elaine gave him the bills from the cash register and the bank bag that was under the counter.  Afterwards, the man told Elaine to get on the floor and to stay there for five minutes.

Elaine described the man as in his late thirties, about 5'6" to 5'8", weighing 160 to 170 pounds.  He was wearing an "olivey" green, dark jacket and had a nylon stocking over his face with "great big round cut-outs" for his eyes.  Elaine was able to see the man's eyes and eyebrows, and observed him at arm's length for a couple of minutes.  In court, Elaine identified appellant as the robber.

Raymond Heflin, who lives across the street from the Corner Store, noticed a Toyota Corolla parked in a peculiar manner near

- 2 -

the store, and made note of the license tag number, IXQ 344. A few minutes later, Heflin saw appellant, with his face uncovered, run from the front of the store, jump into the Toyota Corolla, and speed away. When the police arrived later, Heflin reported what he had observed. The next day, Heflin noticed the same Toyota Corolla pass him and saw appellant driving the car. Heflin noted the tag number, which was one letter off from the number he had recalled from the previous day. In court, Heflin identified appellant as the person he had seen on those two days.

Deborah Pullen, the owner of the Toyota Corolla, loaned her car to appellant on January 7, 1997. Appellant picked her up from work at about 3:30 p.m., gave her a handgun, and asked her to put it in her house, where it was later found.

Investigator Gary Healy interviewed appellant the day after the crime. Initially, appellant denied any involvement, but later admitted that the police "had the right man in custody." When Healy talked to Elaine about the crime, she described the robber as having blue eyes, and brown hair that was covered by some sort of hat or cloth. Because appellant was a suspect in his mind, Healy created a photo spread by looking for five other photographs of white males, in the same age bracket and with similar characteristics regarding head hair, facial hair, and facial features as appellant. Healy relied on the photograph he had of

appellant in creating the photo display, and not on the witnesses' descriptions.

Heflin identified appellant from the photo spread. Thereafter, he signed the "back of the lineup folder," dated it, and wrote the number of the photograph that he had identified. Two other witnesses, regarding another case involving appellant, identified appellant and signed the back of the form. Thereafter, Healy contacted Elaine and took the photo spread to her. Elaine identified appellant and said "the eyes stood out to her." Healy then turned the folder over, and Elaine signed the back of the form, dated it, and recorded the number of the picture she had identified. Elaine's signature was the fourth signature on the back of the photo spread.

In an opinion letter, the trial court noted that appellant did not assert that the procedure used by Healy was unduly suggestive, but that the photo array itself was unduly suggestive. The court noted that two other persons shown in the array had blue eyes. As to the hair color, Healy had instructed the victims to consider only the features that could not be altered or changed. Healy attempted to cover the head hair on each person in the photo spread for each witness, except Heflin, who had seen appellant's face uncovered.

## Issues 1 and 2

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

So viewed, the evidence showed that appellant entered the Corner Store, displayed his gun, and ordered Johnnie and Fogle to "[g]et on the floor right now, I'm not kidding." Appellant then approached the cashier, Elaine, pointed his gun at her, and demanded money. After some difficulty getting the cash register open, Elaine gave appellant the money from the register and the bank bag containing money. Thereafter, appellant told her to "get on the floor and stay there for five minutes." Elaine did as instructed because "he was holding a gun on [her]." After appellant left the store, Johnnie, Fogle, and Elaine got off the floor, and Elaine called the police.

> [O]ne accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct, is subject upon conviction to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime.

Brown v. Commonwealth, 230 Va. 310, 314, 337 S.E.2d 711, 713-14 (1985).

The evidence established that the detention of the store's occupants, Johnnie and Fogle, who were not victims of the robbery, while appellant robbed Elaine, was separate and apart from the restraint inherent in the act of robbery.  Forcing Johnnie and Fogle onto the floor was greater than the kind of restraint needed to rob Elaine.  After the robbery was completed and the money received from Elaine, appellant forced her onto the floor and demanded that she stay on the floor for five minutes, actions not inherent in or necessary for completion of the crime of robbery.  Cf. Cardwell v. Commonwealth, 248 Va. 501, 511, 450 S.E.2d 146, 152-53 (1994) (transporting victim from robbery scene was detention separate and apart from restraint needed to commit robbery and was committed to protect fruits of robbery and to escape arrest).  The evidence was sufficient to prove beyond a reasonable doubt that appellant committed three abductions and used a firearm in the commission of those abductions.

## Issue 3

The trial court is responsible "'to see that the law has been clearly stated and that the instructions cover all the issues which the evidence fairly raises.'"  Stewart v. Commonwealth, 10 Va. App. 563, 570, 394 S.E.2d 509, 513 (1990) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).  However, "'[i]t is error to give an instruction,

- 6 -

though correct as an abstract statement of law, unless there is sufficient evidence in the record to support it.'" Pannell v. Commonwealth, 9 Va. App. 170, 172, 384 S.E.2d 344, 345 (1989) (quoting Swift v. Commonwealth, 199 Va. 420, 424, 100 S.E.2d 9, 13 (1957)).

The trial court instructed the jury on the elements that the Commonwealth must prove for abduction and robbery convictions. The jury was instructed that abduction required that "the defendant by force or intimidation did seize, take, transport or detain" the victim and that he did so with the intent to deprive the victim of his or her personal liberty. However, the court refused appellant's instruction that stated: "The court instructs you that an abduction is a restraint that is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime."

The facts did not support the refused instruction. The evidence showed that Johnnie and Fogle, who were forced to the floor at gunpoint, were not victims of the robbery. After appellant completed the robbery of Elaine, he ordered her to the floor at gunpoint and told her not to move for five minutes. The evidence showed that the restraint used on Johnnie and Fogle and then, after the robbery, on Elaine, was separate and apart from, and not incidental to, the restraint required to rob Elaine. There was no dispute about what happened at the scene,

and no reasonable juror could have found to the contrary.  As the facts did not support it, the trial court did not err in refusing appellant's instruction.

## Issue 4

Appellant contends that his in-court identifications by the witnesses should have been suppressed because they had been shown a suggestive photo array.  On appeal, it is appellant's burden to show that the trial court's denial of his suppression motion, when considering the evidence in the light most favorable to the Commonwealth, constituted reversible error. See Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992).

The evidence supports the trial court's finding that the photograph display, which included appellant's photograph, was not unduly suggestive.  Investigator Gary Healy testified that he assembled the photographic array by choosing five other photographs of white males of approximately appellant's age, with similar facial features and similar head and facial hair. The trial court noted that two persons in the array, other than appellant, had blue eyes.  Regarding the hair color, Healy instructed the victims not to consider features that could be altered or changed, like facial and head hair, when inspecting the photographs.  Moreover, Healy attempted to cover the head hair on each person in the photo spread for each witness, except

- 8 -

Heflin, who had seen appellant's face uncovered. Because the photo array was not unduly suggestive, the trial court's ruling was not erroneous.

After identifying appellant from the photo array, the witnesses signed the back of the array, dated it, and recorded the number of the picture he or she had identified. Elaine Armentrout was the fourth witness to sign the back of the array. Appellant claims that seeing the other signatures after her identification of appellant constituted an impermissible influence on Elaine's in-court identification of appellant. This claim is without merit. Elaine had already identified appellant from the photo array before she saw the other signatures on the back of the display.

In any event, the out-of-court identifications were so reliable that no substantial likelihood of misidentification existed. In making this determination, the following factors are considered:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Regarding the first factor, Elaine observed appellant at arm's length for a couple of minutes. Heflin observed appellant

leaving the store, get into a car that Heflin had already noticed because of the way it was parked, and saw appellant speed away from the scene. Appellant's face was uncovered when Heflin saw him. Clearly, Elaine and Heflin had the opportunity to view appellant.

Second, both witnesses paid attention to appellant. Elaine observed appellant while he ordered her husband and another customer to lie on the floor. Elaine observed appellant for a couple of minutes as he robbed her. Heflin, having already noticed the peculiarly parked car, noticed appellant run from the store, jump into that car and speed away.

In addition, the witnesses' descriptions of appellant were accurate. Elaine described appellant's eyes as blue. She and Heflin described appellant's hair as brown. Moreover, neither witness hesitated when identifying appellant. Thus, the witnesses demonstrated a high level of certainty at the confrontation. Lastly, Heflin identified appellant within one day of the crime, and Elaine identified appellant shortly thereafter. We find that no substantial likelihood of misidentification existed.

The reliability of the identification was further supported by appellant's admission to Healy that the police "had the right man in custody." The evidence also showed that the car Heflin

observed and its license plate number was the car loaned to appellant on the afternoon of the crime.

Therefore, appellant's claim that the out-of-court identifications tainted the in-court identifications is without merit.  The trial court did not err in denying appellant's motion to suppress the in-court identifications of appellant by the witnesses.

Accordingly, the trial court's judgment is affirmed.

<u>Affirmed.</u>