UNITED STATES of America,
Appellee,

v.

Cruz Hererra RODRIGUES, Defendant,
Appellant.

No. 7569.

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1970.

Decided Oct. 30, 1970.

David H. Lamson, Boston, Mass., by appointment of the Court, with whom Hamilton & Lamson, Boston, Mass., was on brief, for appellant.

Willie J. Davis, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Appellant was convicted of selling heroin not pursuant to a written order in

violation of 26 U.S.C. § 4705(a) on the basis of three separate sales to one Wheeler, a government agent. At trial appellant denied ever selling the drugs to the agent, but testified that on the first occasion upon inquiry he merely suggested to Wheeler a possible source of drugs and that, with respect to the second and third transactions he acted as a "procuring agent" doing Wheeler a "favor". Wheeler testified to the contrary that the appellant did make the sales in question by directly facilitating the first and second transactions and personally delivering the drugs to Wheeler on the third occasion.

An initial question arises from the discrepant versions of what actually occurred. In Sylvia v. United States, 312 F.2d 145, 147 (1st Cir. 1962), we noted as a settled principle that one cannot both deny the deed and say he was entrapped into doing it. *See also* Gorin v. United States, 313 F.2d 641, 654 n. 10 (1st Cir. 1963). Appellant denied committing the acts as related by Agent Wheeler; with respect to the second and third transactions, however, he has admitted to facts which would be sufficient to sustain a conviction for selling narcotics unless the jury were to conclude that his was the rare case of a mere "procuring agent". United States v. Barcella, 432 F.2d 570 (1st Cir. 1970). There is no contradiction in maintaining that one was merely a procuring agent and was entrapped into even that service.

The appellant's account of the first transaction, however, is inconsistent with an entrapment defense. One does not "sell * * * narcotic drugs" within the provisions of § 4705(a) by merely suggesting a possible source. The appellant cannot maintain that on this particular occasion he did not sell anything but that, in any case, he was entrapped into it. With respect to the first transaction standing alone, therefore, the appellant would not be entitled to a charge on entrapment. The fact that the court chose to charge the jury on entrapment with respect to all three transactions could not, of course, have prejudiced the appellant.

The appellant's primary contention in this appeal revolves around the shifting burden of proof on the entrapment defense as discussed in Kadis v. United States, 373 F.2d 370, 372, 373 (1st Cir. 1967), and the denial by the district court of the appellant's motion for acquittal. In *Kadis* we expressly disavowed the traditional bifurcation of entrapment into sub-issues of inducement and predisposition. In its stead we adopted a more comprehensive approach involving an examination of the "ultimate questions of entrapment". *Kadis, supra* at 374. Our analysis placed an initial burden of going forward on the defendant, which when met shifts a complementary burden of proof on to the prosecution:

> "If the defendant shows, through government witnesses or otherwise, some indication that a government agent corrupted him, the burden of disproving entrapment will be on the government; but such a showing is not made simply by evidence of a solicitation. There must be some evidence tending to show unreadiness." *Kadis, supra* at 374.

Appellant argues that he has met this initial burden of going forward and that the government has failed as a matter of law to meet its heavier burden of proving beyond a reasonable doubt that "the defendant was not in fact corrupted by the government agent". *Kadis, supra* at 374. The court's charge to the jury on this issue was again more favorable to the appellant than it had to be under *Kadis*. The charge placed the burden on the government to prove beyond a reasonable doubt that the appellant was predisposed to commit the crimes in question without noting the initial burden of going forward which rests on the defendant as set forth by *Kadis*. The appellant's version of the facts demonstrated little more than mere solicita-

tion.* A jury would of course be entitled to believe the government's version of what occurred, that three simple requests for drugs, without censurable pressure of any sort, led to immediate affirmative responses on the part of the appellant and subsequent sales of heroin. The sole discussions, in the government's version, were of price, quantities, and a statement by appellant relating to a New York source of supply. In any event, whether or not the jury, if asked, would have found that defendant had met his burden of showing something more than mere solicitation, it found that the government had met its burden of disproving entrapment. The evidence, unlike the undisputed testimony in Sherman v. United States, 356 U.S. 369, 373, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), presented a jury question. Osborn v. United States, 385 U.S. 323, 331, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966).

It is true that the government did not produce evidence of appellant's prior connection with the narcotics trade. Although such evidence is admissible to rebut a proferred defense of entrapment, it is not the only means available to the government to meet its burden. A jury can find predisposition beyond a reasonable doubt by looking to the totality of circumstances involved in the particular transactions in question. Otherwise, a first offender, disposed to commit the crime for which he is charged, would find sanctuary in the entrapment defense merely because the government would be unable to prove prior nonexistent activities. The entrapment defense does not require such a result. The court's denial of the appellant's motion for acquittal was proper.

Affirmed.

---

* Appellant makes much of the fact that Wheeler appeared "shaky" at the time of the second and third transactions. The sole source of this characterization is a brief reference in the appellant's own testimony which was uncorroborated by other defense witnesses who assertedly observed the entire affair.