STATE OF NORTH CAROLINA v. RAYNARD BLACKWELL

No. 839SC724

(Filed 3 April 1984)

1. Criminal Law § 121— necessity for instruction on entrapment

In a prosecution for felonious possession for the purpose of sale and the felonious sale of marijuana, defendant was entitled to an instruction on the defense of entrapment where defendant presented evidence tending to show that an undercover agent knew that defendant was unemployed and in need of money; the agent told defendant that he was interested in opening a pool hall and that defendant could manage it before there was any discussion of drugs; the agent was the first one to raise the subject of drugs; defendant made no drug buy for the agent at their first meeting; the agent sought out defendant and continued to imply that he was going to open the pool hall and that defendant would manage it; the agent sometimes gave defendant money; defendant sought out information on how to buy drugs and actually bought drugs for the agent only because he needed a job and he believed that the agent had promised him a job; and defendant made no profit on either of the drug buys he made for the agent.

2. **Narcotics § 4.5— failure to instruct on elements of sale of marijuana**

The trial court erred in failing to instruct on the elements of the offense of sale or delivery of marijuana because it found as a matter of law that there was no entrapment and because defendant had admitted the transfer of the marijuana where the evidence required the trial court to instruct on entrapment.

APPEAL by defendant from *Smith, Donald L., Judge.* Judgment entered 31 March 1983 in Superior Court, PERSON County. Heard in the Court of Appeals 19 January 1984.

Defendant was charged with felonious sale of marijuana and felonious possession of marijuana for the purpose of sale on 6 March 1982. Defendant tendered a plea of not guilty.

At trial, the State's evidence tended to show: Undercover agent Rick Barney was in Roxboro on 6 March 1982. Late that afternoon, while he was "standing around," agent Barney struck up a conversation with defendant. The two men were standing in the doorway of a building which had formerly housed a pool hall. Barney learned that defendant was working parttime washing cars. Barney asked defendant about the possibility of buying "some acid or LSD." Defendant responded that he could get "acid, marijuana or cocaine" for Barney. Barney told defendant that he was thinking about opening up the pool hall. Barney told defendant that he managed a pool hall in Wilson and that he had talked to a business partner about opening this Roxboro pool hall. Barney "implied" to defendant that the defendant could become an employee of the pool hall. The conversation then returned to drugs, and defendant told Barney that he could find drugs. Barney said that he was interested in some acid or LSD. Defendant left and returned, saying that "there was no good dope on the street right now." Defendant asked if Barney wanted some marijuana. Barney replied that he wanted "a nickel" and gave defendant $5.00. Defendant left and returned with a plastic bag of what SBI tests later showed to be marijuana.

On or about 14 March 1982, defendant took agent Barney to Caswell County. On the way, defendant talked with Barney about setting up the pool hall, indicating that he perceived Barney as a prospective employer. In Caswell County, defendant introduced Barney to a man named Sherman. Barney sought to buy marijuana from Sherman, but Sherman did not have any drugs on

hand. Defendant then went across the street. When he returned, defendant sold a quarter pound of marijuana and two LSD blotter acid units to Barney for $120.00. Agent Barney never saw defendant smoking marijuana.

Defendant's evidence tended to show: Defendant first met agent Barney on the street, in front of the building that used to be a pool hall. Barney asked defendant how business was before the pool hall closed. Defendant told him that there had been a good business there. Defendant told Barney that he was unemployed and occasionally washed cars to make some money. Barney commented that defendant could manage a pool hall, noting that people seemed to know him. Barney then asked defendant about drugs. Defendant replied that he "couldn't find any." Barney told defendant that he owned several pool halls and that he would talk to his business partner about the pool hall in Roxboro. There was no drug sale at this first meeting.

Several days later, defendant heard that Barney was "asking around" for him. They met and talked again about opening the pool hall. They went to talk to the former proprietor of the pool hall. They inquired about the rent and got the name and address of the owner of the building. Barney then asked defendant how easy it was to get drugs on the street. Defendant replied that he "didn't bother with the stuff" but that anyone his age on the street had knowledge of it. Defendant said, "I could probably find it for you." Barney asked him to try and gave him $5.00 to buy marijuana. After several attempts, defendant bought some marijuana and handed it to Barney. Defendant did this because: "I trusted the guy. He was going to give me a job. I needed a job desperately. I had been out of work for six months." At this meeting, Barney told defendant that he had pool halls in Wilson, Cary, and four or five other places and that he thought defendant would be "perfect" as manager of the Roxboro pool hall. Barney told defendant that he could give defendant a "blank check" to fix up the place.

Barney "kept coming back and forth," checking on defendant and trying to find him. Barney asked about defendant around town and would meet him on the streets. Barney met with defendant every six or seven days over a three week period. Barney would sometimes give defendant money, saying: "Well, here's a

few dollars for your trouble. I know you have things that you'd rather be doing." On 14 March 1982, Barney stopped defendant on the street and asked: "Do you know where I could make a big buy?" Defendant replied, "Well, I don't know. I'll ask around." Defendant got directions to a house in Caswell County and was told to ask for Sherman Stewart. Defendant did not know Sherman Stewart and had never before been to his house. Defendant and Barney went to Caswell County. Defendant spoke to Sherman Stewart and then went to another house. Defendant bought a quarter pound of marijuana and got some LSD for Barney. Defendant would not have made the inquiries or bought the drugs if Barney had not led him to believe that Barney would give him a job. At this time, Barney had long hair and looked like he had been working on a construction site.

About a week after Barney and defendant had gone to Caswell County, Barney returned by himself and made a buy of a quarter pound of marijuana. It was after that, on 28 March 1982, that defendant was arrested for sale and possession of marijuana, charges arising out of the transaction of 6 March 1982.

In the past, defendant had been convicted of possession of marijuana, giving a worthless check, and concealing merchandise. He was also convicted of possession of marijuana and LSD in Caswell County, charges arising out of the 14 March 1982 transaction.

At the close of the evidence, defendant requested that the trial judge instruct on entrapment. The judge denied this request, saying: "There was no entrapment." The judge also announced that, because defendant "had admitted a sale and delivery," he was going to give a peremptory instruction on sale and delivery:

> I am not going into the elements. I am going to instruct that if they believe the State's evidence beyond a reasonable doubt or the defendant's evidence beyond a reasonable doubt or either one or both that they would return a verdict of guilty of sale or delivery of marijuana.

The judge instructed the jury accordingly. The judge noted that, before the jury retired, defendant "objected again to the Court's denial of his request for instruction on the defense of entrapment and that he further specifically objects to the Court's peremptory

instruction on the charge of sale or delivery of marijuana." Both objections were overruled, and defendant took exception thereto.

The jury returned verdicts of guilty of sale and delivery of marijuana and guilty of possession of marijuana with intent to sell. Defendant was sentenced to two years in prison. Defendant appeals.

*Attorney General Edmisten by Assistant Attorney General Douglas A. Johnston, for the State.*

*Ramsey, Hubbard, Galloway & Cates, by Mark Galloway, for defendant-appellant.*

EAGLES, Judge.

[1] Defendant assigns as error the trial court's failure to instruct on entrapment. Defendant contends that the evidence concerning entrapment was in conflict and that it was thus an issue for the jury. We agree.

It is the duty of the court to instruct the jury on all the substantive features of a case raised by the evidence, and all defenses arising from the evidence constitute substantive features of a case. *State v. Brock,* 305 N.C. 532, 540, 290 S.E. 2d 566, 572 (1982). The defense of entrapment requires proof of two essential elements: (1) acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime, and (2) that the criminal design originated in the minds of the law enforcement officers, rather than the innocent defendant, such that the crime was the product of the creative activity of law enforcement authorities. *State v. Stanley,* 288 N.C. 19, 215 S.E. 2d 589 (1975); *State v. Grier,* 51 N.C. App. 209, 275 S.E. 2d 560 (1981). The State's evidence and defendant's evidence both tend to show "acts of persuasion" by Barney to induce defendant to purchase drugs, thus satisfying the first requirement for entrapment. The critical and more difficult question here is whether there was evidence that defendant was induced by Barney to take action that he was not predisposed to take.

It is clear from the record that the evidence concerning defendant's predisposition to criminal activity was in conflict. The

State's evidence tends to show that defendant told Barney that he could get drugs for Barney *before* there was any discussion about opening the pool hall; that defendant bought drugs for Barney at their first meeting; and that defendant knew where to make a big drug buy in Caswell County.

Defendant's evidence tended to show that Barney knew that defendant was unemployed and in need of money; that Barney told defendant that he was interested in opening the pool hall and that defendant could manage it *before* there was any discussion of drugs; that Barney was the first one to raise the subject of drugs; that defendant told Barney that he "couldn't find any" and made no drug buy for Barney at their first meeting; that Barney sought out defendant and continued to imply that he was going to open the pool hall and that defendant would manage it; that defendant had difficulty locating drugs to buy for Barney; that Barney sometimes gave defendant money; that defendant had never been to Caswell County to buy drugs before 14 March 1982; and that defendant made no profit on either of the drug buys he made for Barney.

In *State v. Grier, supra,* the State's evidence tended to show that defendant first raised the issue of drug purchase; that defendant knew where and how to make a drug buy; and that others viewed defendant as someone involved in drug trafficking. Defendant's evidence tended to show that the undercover agent knew defendant was unemployed and in need of money; that the agent offered defendant financial assistance and bought beer, food, and cigarettes for defendant; that the agent first raised the subject of a drug buy; that the agent drove defendant to the locations where defendant bought drugs; and that defendant did not profit on the drug buys. Based on that evidence, this court held that: "Since evidence of entrapment must be uncontradicted in order for the judge to take the issue from the jury, the trial judge acted properly in charging the jury on the defense and leaving it to their determination as an issue of fact." 51 N.C. App. at 212-13, 275 S.E. 2d at 563. Our Supreme Court has also noted: "Ordinarily, if the evidence presents an issue of entrapment it is a question of fact for the jury to determine. 1 Whartons Criminal Law and Procedure, s. 132 (supp.)" *State v. Stanley,* 288 N.C. at 32, 215 S.E. 2d at 597.

We find here that defendant presented evidence that he was not predisposed to buy drugs but sought out information on how to and actually did buy drugs only because he needed a job and he believed that Barney had promised him a job. We do not find entrapment as a matter of law but find that the evidence here does present the issue of entrapment. The trial judge should have charged the jury on entrapment and left it to their determination as an issue of fact.

[2] The trial court declined to submit instructions on the elements of the offense of sale or delivery of marijuana because it found as a matter of law that "there was no entrapment" and because defendant had admitted the transfer of marijuana. Because we hold that the jury should have been instructed as to the defense of entrapment, we hold that it was error for the trial judge to refuse to charge the jury on the elements of the sale or delivery offense. Because we remand for a new trial based on the trial judge's denial of defendant's request for an instruction on entrapment and the trial judge's refusal to instruct on the elements of the offense, we need not address defendant's remaining assignments of error.

New trial.

Judges HEDRICK and HILL concur.