## Salem

JOSEPH BRYANT MCCOY

v.

COMMONWEALTH OF VIRGINIA

No. 1162-87-3

Decided October 31, 1989

COUNSEL

Harry F. Bosen, Jr., for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

COLEMAN, J.—The sole issue presented in this criminal case is whether the trial court was required on the facts to instruct the jury on the defense of entrapment. Joseph Bryant McCoy was indicted for possession of cocaine with the intent to distribute. The jury convicted him of possession of cocaine with the intent to distribute, but as an accommodation to another individual. Code § 18.2-248. The trial court sentenced him to ten years in the penitentiary in conformity with the jury verdict. On appeal McCoy contends that the evidence viewed in the light most favorable to the theory of entrapment was sufficient to raise a jury question whether a police agent entrapped him into purchasing cocaine for resale.

Because the evidence established that McCoy was predisposed to purchase and possess cocaine and to distribute or give it to another as an accommodation, the evidence was insufficient to raise a question for the jury's determination whether a police agent entrapped McCoy into committing the crime for which he was charged. Accordingly, the trial court did not err in refusing to instruct the jury on the defense of entrapment.

A jury must be instructed on any theory or affirmative defense supported by the evidence. See Stevenson v. United States, 162 U.S. 313, 322 (1896). Thus, we must decide whether the evidence when viewed most favorably to that theory could have supported a finding of entrapment. Neighbors v. Commonwealth, 214 Va. 18, 19, 197 S.E.2d 207, 208 (1973).

McCoy, a forty year old licensed pharmacist, moved to Pulaski County in February 1986, to accept a job at People's Drug store. McCoy became close friends with Clyde R. "Wink" McMillian and the two used cocaine together on a number of occasions. In June 1986, McMillian and his wife were charged with grand larceny in Franklin County. Concerned about these charges,

McMillian told Officer Ralph Dobbins of Pulaski County that he could supply information about "major sized" drug dealers. Dobbins told McMillian that if he supplied accurate information and cases were made, Dobbins would tell the Commonwealth's Attorney of Franklin County the source of the information.

In August 1986, McMillian and McCoy discussed purchasing cocaine for their personal use. McMillian suggested that they purchase enough for resale because he needed funds for his legal defense of the Franklin County prosecution. Because cocaine previously purchased from McMillian's source had been of poor quality and too expensive, they agreed that McCoy would purchase an ounce from a source whom he knew in Blacksburg. Totally independent of McMillian and without McMillian's knowledge, McCoy contacted a drug supplier whom he knew in Blacksburg to arrange the cocaine purchase. McCoy paid the supplier $200 solely from his funds as a downpayment.

On August 13, 1986, McCoy telephoned McMillian to inform him that he was leaving for Blacksburg to complete the buy. McMillian called Officer Dobbins and informed him that McCoy was involved in "an ongoing drug transaction." McMillian provided Officer Dobbins detailed, reliable information that the drug transaction had transpired at McCoy's apartment in the early morning on August 14, 1986. Officer Dobbins requested that McMillian call McCoy and in the course of the conversation, which Dobbins monitored, McCoy acknowledged purchasing the drugs which he said were hidden at his apartment. McCoy had paid the balance of the $1,800 for the cocaine solely from his funds. Based on the information, Dobbins obtained a search warrant which led to seizure of the cocaine from a suitcase hidden in McCoy's bedroom. McCoy was arrested. Although McCoy initially denied knowledge of the cocaine, he soon admitted that he had purchased it. In all material essentials, McCoy acknowledged what had occurred. He admitted that he had purchased the cocaine for his and McMillian's personal use and for McMillian to resell, but argued that McMillian entrapped him into committing the more serious offense of possession for resale. Based upon these facts, he contends that the jury should have been told that he could be acquitted of possession of the cocaine if the jury found that a police agent provided the intent for him to obtain the drugs for resale.

At trial, McCoy testified that he had no intention to purchase cocaine to resell for personal financial gain. He said the quantity for resale was going to McMillian and he intended to retain some for personal use only. McCoy testified that he would not have purchased the ounce of cocaine except for McMillian's insistence that he needed the money. McCoy admitted that he had purchased smaller amounts of cocaine in Pulaski for his personal use. McCoy was convicted of possession with an intent to distribute as an accommodation, and not with the intent to profit thereby. Under the evidence presented, there were, in fact, two levels of distribution contemplated by this scheme. McCoy purchased the cocaine with the intent to distribute the cocaine as an accommodation to his friend, McMillian who, in turn, intended to redistribute at least a portion of the cocaine for profit. There were, thus, two theories under which the case could be proved. Under the facts, however, for the reasons that follow, we hold that the defense of entrapment was not available under either theory.

 "Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." *Stamper v. Commonwealth*, 228 Va. 707, 715, 324 S.E.2d 682, 687 (1985) (quoting *Falden v. Commonwealth*, 167 Va. 549, 555-56, 189 S.E. 329, 332 (1937)). *See Sorrells v. United States*, 287 U.S. 435, 454 (1932). Entrapment occurs when the defendant's criminal conduct was the product of " 'creative activity' [by the police] that implants in the mind of an otherwise innocent person the disposition to commit an offense and induce its commission in order to prosecute." *Stamper*, 228 Va. at 715, 324 S.E.2d at 687. If the criminal design originated in the mind of the defendant and the police did no more than "afford an opportunity for the commission of a crime" by a willing participant, then no entrapment occurred. *Huffman v. Commonwealth*, 222 Va. 823, 828, 284 S.E.2d 837, 840 (1981) (quoting *Cogdill v. Commonwealth*, 219 Va. 272, 279, 247 S.E.2d 392, 396 (1978)). *See also Matthews v. United States*, 485 U.S. 58, 66 (1988).

 Assuming that Clyde R. "Wink" McMillian was a police agent for determining whether the government entrapped McCoy into committing a crime, *see Keener v. Commonwealth*, 8 Va. App. 208, 214, 380 S.E.2d 21, 25 (1989), the police merely af-

forded McCoy an opportunity to commit a crime which he had committed on other occasions and was predisposed and willing to commit. "There is nothing improper in the use, by police, of decoys, undercover agents and informers to invite the exposure of willing criminals and to present an opportunity to one willing to commit a crime." *Schneider v. Commonwealth*, 230 Va. 379, 381, 337 S.E.2d 735, 736 (1985) (quoting *Stamper*, 228 Va. at 715, 324 S.E.2d at 687). McCoy admitted to participation in the previous purchases of drugs and in the accommodation distribution of those drugs between himself and McMillian. Reluctance to engage in crime is not transformed into entrapment whenever a person hesitantly, but willingly, acquiesces in the request of a close ally to commit a crime. *See People v. Perry*, 75 Mich. App. 121, 254 N.W.2d 810 (1977). Encouragement or solicitation of the commission of a crime by one who is willing and predisposed to commit the crime does not constitute entrapment. *See United States v. Coady*, 809 F.2d 119, 122 (1st Cir. 1987); *United States v. Velasquez*, 802 F.2d 104, 106 (4th Cir. 1986). The fact that McMillian, acting as an agent for the police, may have encouraged or suggested to his friend that he purchase cocaine simply provided McCoy, who was predisposed to the crime, an opportunity to do so. Absent "procurement of . . . [a crime] by one who would not have perpetrated it except for the trickery, persuasion or fraud of the officer . . ." no entrapment has occurred. *Schneider*, 230 Va. at 381, 337 S.E.2d at 736 (quoting *Stamper*, 228 Va. at 715, 324 S.E.2d at 687). When viewed in the light most favorable to McCoy, the evidence proved that he was predisposed to purchase cocaine to distribute to his friend McMillian, albeit as an accommodation, and for his personal use.

We find that this case is controlled by *Neighbors v. Commonwealth*, 214 Va. 18, 197 S.E.2d 207 (1973). In *Neighbors*, the informant, while still in jail, agreed to cooperate with the police in apprehending drug pushers if he was released from jail. Upon his release, the informant repeatedly begged the defendant to sell him drugs. The defendant asserted that he was not predisposed to sell drugs as shown by his repeated refusal to do so on several occasions and that the informant's urging entrapped him into committing an offense that he would not have otherwise committed. When Neighbors finally sold the informant morphine sulphate tablets, he was arrested and convicted of the drug sale. In rejecting Neighbors' contention that he was entitled to an entrap-

ment instruction, the Virginia Supreme Court stated that all the police informant "did was afford an opportunity for the commission of the offense, an opportunity the defendant willingly accepted. Therefore, the evidence was insufficient, as a matter of law, to create a jury issue on entrapment." *Id.* at 19, 197 S.E.2d at 208.

■ McCoy attempts to distinguish his case from *Neighbors* by pointing out that Neighbors admitted that he had previously sold drugs to the informant and, therefore, the evidence showed that Neighbors was predisposed to sell drugs. McCoy argues that he merely admitted to having purchased cocaine in the past for personal use but never for resale. It is not necessary, however, that the evidence prove that an accused has previously committed the same offense with which he is charged in order to establish that he was predisposed to commit an offense. "Otherwise, a first offender, disposed to commit the crime for which he is charged, would find sanctuary in the entrapment defense merely because the government would be unable to prove prior nonexistent activities. The entrapment defense does not require such a result." *United States v. Rodrigues*, 433 F.2d 760, 762 (1st Cir. 1970). Instead, the evidence need only show that the defendant's state of mind was such that once his attention was drawn to the criminal activity he readily accepted it. *Neighbors*, 214 Va. at 19, 197 S.E.2d at 208.

■ The presence or absence of a predisposition to commit a crime is merely one circumstance to be considered in determining whether the intent to commit a crime is solely the product of police activity. Where one is predisposed to commit a criminal act and involvement by a police informant influences the nature or degree of the crime, it cannot be said that the state provided an innocent person with the intent to commit a crime. We construe the defense of entrapment as defined by the Virginia Supreme Court to be more limited than the broad application which McCoy urges. A person ready and willing to engage in certain criminal activity cannot avail himself of an entrapment defense by claiming he was only willing to commit one type of crime but the Commonwealth entrapped him by encouraging him to commit a more serious crime of the same nature. *See United States v. Ewbank*, 483 F.2d 1149 (9th Cir. 1973).

While the legislature has seen fit to make distribution of cocaine as an accommodation punishable with less severity than distribution for profit, the gravamen of the offense is possession of the drug with the intent to distribute it to another. Code § 18.2-248. The evidence fails to support the theory that McCoy was entrapped into committing that offense. In fact, he admits that on this occasion, and on other occasions, he purchased the cocaine with the intent to distribute part of it to McMillian. No evidence in the record shows that McCoy, when provided with an opportunity, was reluctant or unprepared to purchase cocaine to distribute a portion of it to McMillian. *See Coady*, 809 F.2d at 122. While the evidence may well require, as it did, that the jury be instructed that McCoy could be found guilty of distribution as an accommodation, the evidence could not be construed to conclude that McCoy was not predisposed to purchase and distribute cocaine to McMillian, albeit as an accommodation.

These prior drug purchases, together with McCoy's personal planning, arranging, and completing the drug purchase without McMillian's assistance, established as a matter of law that McCoy was predisposed and willing to commit the offense for which he was charged and convicted. Thus, he was not entitled to an entrapment instruction.

■ The jury instruction offered by McCoy embodied a correct statement of the affirmative defense of entrapment. However, it is error to give an instruction which correctly states an abstract legal principle unless evidence exists to support giving of the instruction. *Swift v. Commonwealth*, 199 Va. 420, 424, 100 S.E.2d 9, 13 (1957). Based on the record before us we find that McCoy failed to present evidence sufficient to support a jury finding that he was not predisposed to purchase cocaine for distribution to McMillian as an accommodation.

Accordingly, we affirm the conviction.

*Affirmed.*

Duff, J., concurred.

Benton, J., dissenting.

The evidence supporting Joseph Bryant McCoy's entitlement to an instruction on entrapment is overwhelming. I find no support

for the majority's conclusion that McCoy was predisposed, as a matter of law, to purchase cocaine for resale or distribution. While the evidence establishes that McCoy was a user of cocaine and that McCoy used cocaine on several occasions with Clyde R. McMillian, an agent of the police, the record contains no evidence that McCoy ever sold or distributed cocaine. Nor does the evidence support the drawing of an inference to that effect. Although the majority asserts that McCoy was predisposed to purchase cocaine for resale, it points to no evidence in this record to support that assertion.

" 'Ordinarily, if the evidence presents an issue of entrapment it is a question of fact for the jury to determine.' " *State v. Blackwell*, 67 N.C. App. 432, 437, 313 S.E.2d 797, 800-01 (1984) (quoting *State v. Stanley*, 288 N.C. 19, 32, 215 S.E.2d 589, 597 (1975)). In order to show predisposition, and thereby negate entrapment, the evidence must establish that "the defendant is of a frame of mind such that once his attention is called to the criminal opportunity, his decision to commit the crime is the product of his own preference and not the product of government persuasion." *United States v. Williams*, 705 F.2d 603, 618 (2d Cir.), *cert. denied*, 464 U.S. 1007 (1983). "The fact that [the defendant] here was involved in the drug culture, according to his own admission to being a user, does not establish that he was also a predisposed seller or distributor within the meaning of the crime of which he was convicted." *United States v. Ewbank*, 483 F.2d 1149, 1151 (9th Cir. 1973). When the evidence in this case is "viewed in the light most favorable to the theory of entrapment," *Neighbors v. Commonwealth*, 214 Va. 18, 19, 197 S.E.2d 207, 208 (1973), McCoy clearly was entitled to have the jury decide whether he was induced and encouraged by the police agent, and that absent that inducement and encouragement, whether he would have purchased cocaine for resale.

McCoy and McMillian each considered the other a friend, and both testified that they used a variety of drugs together. McCoy often socialized with McMillian and his wife, and McCoy had been very generous in financially assisting McMillian and his family at a time when the McMillians' financial plight had led to their bankruptcy. He purchased food for them on several occasions, purchased a twenty-seven inch television and a VCR for their home, paid for repairs to their automobile, and purchased a

shotgun for McMillian. In addition, McCoy purchased clothing for both McMillian and his wife, including "a dress winter coat," work clothing, "a couple pair of work boots," shirts and ties. Furthermore, the relationship between McCoy and McMillian was such that they had discussed "going into a business of machine work, welding, and possibly enlarging the scrap yard." McCoy purchased tools and a tool cabinet for McMillian and was considering investing $10,000 in the business venture.

Unknown to McCoy, McMillian was an informant of long standing for the Pulaski County police department and, in particular, for Lieutenant Ralph Dobbins, whom he had known for nine to eleven years. Because of information that McMillian had supplied in the past, Dobbins considered McMillian to be a reliable and valuable informant. Due to their longstanding relationship, McMillian went to see Dobbins shortly after McMillian and his pregnant wife were arrested on warrants charging each of them with two counts of grand larceny committed in Franklin County. McMillian received a commitment from Dobbins that Dobbins would speak to the Commonwealth's Attorney in Franklin County if McMillian supplied Dobbins with information concerning drug dealers and cases were made from that information. McMillian then proceeded to set up the criminal event which would allow him to avoid a prosecution for several felonies in Franklin County.

McMillian began his scheme one day while McCoy was at McMillian's house drinking wine with McMillian and McMillian's wife. McMillian informed McCoy that he and his wife needed funds for his legal defense of the Franklin County prosecution. Using his friendship with McCoy, McMillian solicited McCoy to advance money for the purchase of an ounce of cocaine. McMillian told McCoy that he, McMillian, would dilute the cocaine, sell it, and use the profit for his legal defense. McCoy testified that he told McMillian that he was not going to sell cocaine and that he did not know anybody from whom to buy an ounce of cocaine. McCoy further testified that he was persuaded to help McMillian get money for his defense because McMillian was his friend and because he knew that McMillian was having money problems. McCoy testified that McMillian "was scared to death about Terry being pregnant and having to go to jail." He further testified that he was very fond of McMillian's wife and children.

McMillian first drove McCoy to a place where McMillian had previously purchased drugs. McMillian left McCoy in the automobile and entered alone. When McMillian returned to the automobile he told McCoy that the price was $2,000. Because McMillian had to dilute the cocaine to make a profit and because they were concerned about the quality of the cocaine and the price, they agreed to try other sources. McCoy testified that McMillian "told [him] to look elsewhere, and if [he] could find it cheaper . . . to go ahead and buy it." McCoy later arranged to purchase the cocaine from someone in Blacksburg. When McMillian learned that McCoy had found a source for cocaine, he called Dobbins and told him that McCoy was arranging a cocaine purchase. Dobbins confirmed at trial that he told McMillian "to go ahead and get things set up and then . . . call back." After McCoy had obtained the cocaine, McMillian told Dobbins that McCoy had cocaine in his house. Dobbins obtained a search warrant, found the cocaine, and arrested McCoy.

While McCoy was in jail, McMillian contacted a bondsman from another city, who flew to Pulaski. McMillian and his wife met the bondsman at the airport and took him to the jail to post bond for McCoy. McMillian and his wife signed as guarantors of McCoy's $10,000 bail. McMillian told the bondsman that he was McCoy's "best friend" and was designated to act as McCoy's custodian during McCoy's release. McCoy told the bondsman that McMillian, who paid one-half of the bondsman's fee, was his "best friend."

McCoy was tried on the charge of possession of cocaine with the intent to distribute. At trial, McMillian testified that he, McMillian, was to "cut" and sell the cocaine. McCoy testified that McMillian "was going to take the cocaine and sell it and make whatever he could off of it and give me back my Eighteen Hundred Dollars." On this evidence the jury convicted McCoy of possession with intent to distribute as an accommodation to McMillian.

As a reward to McMillian for disclosing the crime that he instigated, the Pulaski Commonwealth's Attorney informed the Franklin County Commonwealth's Attorney of McMillian's cooperation. McMillian was allowed to plead guilty to one misdemeanor charge in Franklin County and was placed on probation. The grand larceny charges against his wife were dismissed. In ad-

dition, McMillian was given complete immunity from prosecution with respect to the cocaine that he intended to "cut" and sell. He was also given immunity from prosecution with respect to another incident of cocaine use.

Our Supreme Court has consistently cited and invoked "the definition of entrapment given by the concurring opinion of Justice Roberts in *Sorrells v. U.S.*, 287 U.S. 435, 454 (1932): 'Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer. . . .' " *Stamper v. Commonwealth*, 228 Va. 707, 715, 324 S.E.2d 682, 687 (1985); *see also Schneider v. Commonwealth*, 230 Va. 379, 381, 337 S.E.2d 735, 736 (1985); *Falden v. Commonwealth*, 167 Va. 549, 555-56, 189 S.E. 329, 332 (1937). Justice Roberts' concurring opinion in *Sorrells* also states:

Whatever may be the demerits of the defendant or his previous infractions of law these will not justify the instigation and creation of a new crime, as a means to reach him and punish him for his past misdemeanors. He has committed the crime in question, but, by supposition, only because of instigation and inducement by a government officer. To say that such conduct by an official of government is condoned and rendered innocuous by the fact that the defendant had a bad reputation or had previously transgressed is wholly to disregard the reason for refusing the processes of the court to consummate an abhorrent transaction. It is to discard the basis of the doctrine and in effect to weigh the equities as between the government and the defendant when there are in truth no equities belonging to the latter, and when the rule of action cannot rest on any estimate of the good which may come of the conviction of the offender by foul means. The accepted procedure, in effect, pivots conviction in such cases, not on the commission of the crime charged, but on the prior reputation or some former act or acts of the defendant not mentioned in the indictment.

The applicable principle is that courts must be closed to the trial of a crime instigated by the government's own agents. No other issue, no comparison of equities as between the guilty official and the guilty defendant, has any place in

the enforcement of this overruling principle of public policy.

*Sorrells*, 287 U.S. at 458-59.

Consistent with those views, the Supreme Court of Virginia, in *Falden*, stated that the primary focus must be upon whether the government agent engaged in active or passive inducement:

> In the numerous cases we have examined which deal with entrapment the line of cleavage seems to be whether the inducement or incitement on the part of the officer has been active or passive. If active then for reasons stated the prosecution fails.

167 Va. at 556, 189 S.E. at 332. The forbidden conduct has also been described as "creative activity." *Johnson v. Commonwealth*, 211 Va. 815, 817-18, 180 S.E.2d 661, 663 (1971). The use of such creative activity by law enforcement personnel or their agents to promote crime has long been condemned. *See Butts v. United States*, 273 F. 35, 38 (8th Cir. 1921) ("It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it").

Here, McMillian, the police agent, actively and creatively used the combined weight of his friendship, his dire financial plight, and the spectre of his pregnant wife in prison to induce McCoy to join him in criminal activity, which McMillian conceived and which McCoy had not engaged in previously. McMillian conceived of and engaged in this "creative activity" for the purpose of obtaining a bargaining opportunity, negotiated in advance with his police handler, to absolve him of his own pending felony criminal charges. Whether the line of propriety had been breached was a question of fact that should have been submitted to the jury.

The cases upon which the majority relies are, for the most part, supportive of McCoy's position that the entrapment issue should have been submitted to the jury. In *People v. Perry*, 75 Mich. App. 121, 254 N.W.2d 810 (1977), the issue of entrapment was raised in the trial court and was submitted to the fact finder. The question on appeal was whether the fact finder "erred in finding no entrapment." *Id.* at 123, 254 N.W.2d at 811. In *Ewbank*, which the majority also cites, the question of entrapment likewise

was submitted to the trier of fact. 483 F.2d at 1151. The question on appeal was whether the trier of fact erred in failing to acquit the defendant based upon a consideration of the factual issues giving rise to the entrapment issue. *Id.* at 1150; *see also United States v. Rodrigues*, 433 F.2d 760, 761 (1st Cir. 1970) ("the [trial] court charge[d] the jury on entrapment"), *cert. denied*, 401 U.S. 943 (1971).

Although in *United States v. Coady*, 809 F.2d 119 (1st. Cir. 1987), the issue of entrapment was not submitted to the jury, the defendant in that case was not entitled to an instruction as to entrapment because his attorney stipulated that the defendant would not present an entrapment defense. *Id.* at 121. In *United States v. Velasquez*, 802 F.2d 104 (4th Cir. 1986), the court, citing *United States v. DeVore*, 423 F.2d 1069 (4th Cir. 1970), *cert. denied* 402 U.S. 950 (1971), upheld the trial judge's refusal to give an entrapment instruction. The court stated that:

> [d]efendants here only produced evidence of solicitation on the issue of inducement. . . . [T]hat is not enough to show inducement, and thus, make entrapment a question for the jury.

*Id.* at 106. *DeVore* requires a defendant to show persuasion or inducive conduct in order to be entitled to an instruction on entrapment. 423 F.2d at 1071; *see also Coady*, 809 F.2d at 122 (defense must prove more than mere solicitation to be entitled to an entrapment defense).

No doubt exists on this record that McMillian instigated the crime for which McCoy was convicted and that the instigation exceeded the bounds of mere solicitation. The inducement for getting McMillian to purchase the drugs was the plea of a bankrupt friend that he and his pregnant wife would go to prison if he did not have money to hire an attorney. It was a plea to a person who considered McMillian to be his "best friend" and who in the past had demonstrated a willingness to help the McMillians' financially. The bond of friendship often transforms what might otherwise be mere solicitation into powerful inducement.

The evidence is abundant that McCoy was induced to participate in a misguided attempt to assist his friends. Furthermore, no evidence in this record establishes that McCoy's state of mind was

such that he readily accepted an opportunity to sell narcotics or to distribute narcotics to others. Indeed, the record contains no support for the majority's assertion that "on other occasions [McCoy] purchased the cocaine with the intent to distribute part of it to McMillian." McCoy testified that he and McMillian used cocaine "two or three times over at his house and once or twice over at [McCoy's] house." He further testified that on one occasion McMillian, using McCoy's money, purchased cocaine from McMillian's drug supplier. McMillian and McCoy used that cocaine together. McMillian also testified that he used McCoy's money on an occasion to purchase cocaine. Thus, when viewed in the light most favorable to the theory of entrapment, *Neighbors*, 214 Va. at 19, 197 S.E.2d at 208, the evidence establishes that it was McMillian, not McCoy, who previously distributed cocaine. When properly viewed, the evidence created an issue that required a factual resolution by the jury.

Unlike the facts in this case, in *Perry*, upon which the majority relies, "[t]here were no appeals made to defendant's sympathies. The requests which defendant fulfilled seem[ed] somewhat routine." 75 Mich. App. at 126, 254 N.W.2d at 812. In *Ewbank*, upon which the majority also relies, the defendant could not have established entrapment as a matter of law because:

> [t]he inducing cause of the sale was the request that came from [a third party], not from [the informant]. . . . [The informant] furnished the market but not the inducing cause of the sale. As an inducing or motivating cause of sale, [the informant] had consistently failed.

483 F.2d at 1151. It is significant to note, however, that in both cases the question of entrapment was submitted to the trier of fact.

The case before us is more akin to *People v. Ramon*, 86 Mich. App. 113, 272 N.W.2d 124 (1978). There, the defendant purchased narcotics and delivered them to a police informant for sale after the police informant "told defendant he had been arrested on a breaking and entering charge in another county and needed funds to engage an attorney." *Id.* at 115, 272 N.W.2d at 124. The court held that the false statements and pleas for sympathy were a sufficient inducement to constitute entrapment. *Id.* at 116, 272 N.W.2d at 125.

The narrow issue in the case before us is whether McCoy was entitled to have the jury instructed as to the issue of entrapment. Even "[i]f there be conflict in the evidence as to whether the criminal intent originated in the mind of [McCoy] or was induced or incited by the [police agent], then the solution of the question should be submitted to the jury." *Falden*, 167 Va. at 556, 189 S.E. at 332; *see also Cogdill v. Commonwealth*, 219 Va. 272, 279, 247 S.E.2d 392, 396 (1978). For these reasons, I would hold that the trial judge erred in refusing the instruction, reverse the conviction, and remand the case for a new trial.