EMORY BRUCE HOWARD

v.

COMMONWEALTH OF VIRGINIA

No. 0565-92-3

Decided November 16, 1993

COUNSEL

Edward G. Stout (Bressler Curcio & Stout, on brief), for appellant.

Janet F. Rosser, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, J.**—Emory Bruce Howard (Howard) appeals his conviction by a jury on two counts of possession of more than five pounds of marijuana with the intent to distribute. The trial court sentenced Howard in accordance with the jury's verdict to ten years imprisonment on each conviction. In this appeal, Howard challenges his convictions on the ground that the trial court should have allowed him to introduce evidence as to the quality of the marijuana. Additionally, Howard challenges his conviction on the second count on the ground that the evidence required that the jury be instructed on entrapment, which the trial court refused to do. We find no merit with either argument, and, accordingly, affirm Howard's convictions.

In July and August 1988, State Trooper Larry Lilley, working undercover, purchased over two hundred and seventy-two pounds of marijuana from Howard in two separate transactions. Howard harvested the marijuana from plants growing wild in the midwestern United States. Lilley and Howard met through Vernon Himes, a police informant and former business partner of Howard. At their first meeting on July 26, 1988, Lilley represented himself to Howard as Larry McNeil, a dealer "operating out of the Kentucky area."

Lilley and Howard negotiated the purchase of thirty-five to forty pounds of marijuana that Howard had available at that time. Lilley in-

formed Howard that he wanted to purchase a greater quantity, and Howard stated that he could obtain up to five hundred pounds on his next trip to the Midwest. The following day, Lilley met with Howard to complete the transaction arranged the day before. Howard turned over the marijuana in exchange for $1500 and told Lilley he would leave for Kansas in two days to collect the five hundred pounds of marijuana Lilley required.

On August 1, 1988, Lilley learned that Howard had decided not to go through with the transaction; however, on August 17, Himes contacted Lilley and told him that Howard was ready to make the sale. In a series of meetings, Howard and Lilley negotiated the purchase of a large quantity of marijuana that Howard claimed to have brought back from the Midwest. On August 29, 1988, Howard and Lilley met to conclude the transaction. The police arrested Howard at that time and recovered two hundred and sixty-five pounds of marijuana from the motor home Howard was driving.

At trial, Howard stated that he and Himes had often seen marijuana plants growing wild during trips they made through the Midwest as part of their trucking business. Howard claimed that after the partnership ended, Himes approached him and offered to locate a buyer if Howard would harvest some of the wild plants and bring them to Virginia for sale. Howard said that Himes described Lilley as a member of organized crime from Louisville, Kentucky.

Howard admitted making the first sale to Lilley. He claimed that he decided not to go through with the second transaction after local authorities in Kansas "ran him out of the deal." Howard claimed that Himes told him, "Larry is not going to like this," and later said that he (Himes) had been instructed to tell Howard, "they know where your son lives."

Howard then left for a camping trip with William Thacker. While on the trip, Howard and Thacker came upon some marijuana growing wild. Howard called Himes and said that he would harvest the marijuana and bring it back to Virginia to sell to Lilley.

Himes testified that at no time did he try to persuade Howard to harvest the marijuana. He claimed that Howard had approached him about obtaining a buyer after already harvesting the first lot of marijuana. Himes also denied making any threats against Howard or his son.

Howard sought to introduce at trial the expert testimony of Dr. John Vasiliades, a toxicologist, who had tested the marijuana that Howard sold Lilley on both occasions. Howard proffered that Vasiliades would testify that the tetrahydrocannabinol (THC) content of the July and August lots was .14 percent THC and .12 percent THC, respectively. Dr. Vasiliades would have further testified that under federal standards "smokable marijuana" contains a minimum of three percent THC. The trial court ruled that this evidence was irrelevant because "the General Assembly has made it unlawful to possess or distribute marijuana," and Howard had conceded that the plant he sold Lilley was marijuana.

Howard asserts that the trial court erred in excluding this evidence because, in so doing, the trial court deprived the jury of relevant information not within their common experience that would have mitigated their determination of Howard's sentence. *Coppola v. Commonwealth,* 220 Va. 243, 252, 257 S.E.2d 797, 803-04 (1979), *cert. denied,* 444 U.S. 1103 (1980). We disagree.

█ In this Commonwealth, "marijuana" is defined by statute as "any part of a plant of the genus Cannabis whether growing or not, its seeds or resin; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or its resin." Code § 54.1-3401. A substance is marijuana because it is a part of a cannabis plant, not because of the amount of THC it contains. Evidence is relevant only "if it has any tendency to establish a fact which is properly at issue." *Wise v. Commonwealth,* 6 Va. App. 178, 187, 367 S.E.2d 197, 202-03 (1988). In this instance, the proof of THC content was not an issue and, therefore, evidence concerning THC content was not relevant to guilt. *See McElroy v. State,* 611 So. 2d 431, 432-33 (Ala. Crim. App. 1992) (defendant's request for independent lab analysis refused because THC content of marijuana is irrelevant in prosecution for possession; Alabama's marijuana definition statute is substantially similar to Code § 54.1-3401).

█ While the THC content of a particular quantity of marijuana may be a mitigating factor with respect to sentencing, it is not the province of the jury to consider such evidence when they determine the sentence. As we said in *Duncan v. Commonwealth:*

Under the statutory scheme, the jury determines the guilt or innocence of the accused. If the jury finds that he is guilty, it then "ascertains" or "fixes" the maximum punishment in accordance

with contemporary community values and within the limits established by law. . . .

*By vesting the trial court with discretionary authority to suspend or modify the sentence imposed by the jury, the legislature intended to leave the consideration of mitigating circumstances to the court.* It is the court that has the responsibility of pronouncing the sentence after the maximum punishment is fixed by the jury. There are sound jurisprudential reasons for adhering to this position, most of which operate to protect the defendant.

*Duncan,* 2 Va. App. 342, 345, 343 S.E.2d 392, 394 (1986) (emphasis added).

The trial court properly excluded the evidence during the guilt-determination phase of the trial. Presentation of evidence of THC content, if at all relevant, was proper to the penalty phase. The record reflects that counsel and the court discussed the issue extensively during the sentencing hearing, although Howard did not seek to introduce Dr. Vasiliades's findings into the record at that time.[1]

Howard contends that the evidence of low THC content was relevant to bolster his claim that the marijuana was found growing wild and should have been admitted to support the truth of a disputed fact. We disagree. The Commonwealth never raised the question of whether the marijuana was growing wild or had been cultivated and it was not relevant to any element of possession or distribution that the Commonwealth was required to prove. *See Wise,* 6 Va. App. at 187, 367 S.E.2d at 202-03.

Howard also argues that, as the Commonwealth was permitted to adduce evidence of the quantity of the marijuana to prove intent to distribute despite his offer to stipulate to this element, the trial court should have allowed him to present evidence of the marijuana's quality to counter the evidence of quantity. We disagree. The quantity of marijuana was an element of the crime charged and the Commonwealth had the burden of proving that element. In *Colclasure*

---

[1] Howard does not raise, and we do not consider the question of whether evidence of THC content should be admitted during the penalty phase of marijuana possession cases. Nonetheless, we express grave doubts about Howard's general argument. A review of the United States Code and Code of Federal Regulations reveals no support for Howard's contention that the federal government considers three percent THC to be a minimum level. The definition of marijuana in 21 U.S.C. § 802(16) makes no reference to THC content and Howard does not provide us with, nor can we find, any federal case law in accord with Howard's position.

*v. Commonwealth,* we said, "[The Commonwealth] is entitled to present by competent evidence a complete demonstration of all the facts upon which the accusation is based. The defendant cannot limit or control presentation of the Commonwealth's case by offering partial or qualified stipulations." 10 Va. App. 200, 202, 390 S.E.2d 790, 791 (1990). Howard had no right to introduce irrelevant evidence simply because the prosecution introduced relevant evidence under a privilege the Commonwealth already possessed and that Howard had no power to take away.

Finally, Howard challenges the trial court's refusal to instruct the jury on the defense of entrapment with respect to the second count of possession with intent to distribute. Howard argues that his testimony regarding Himes's alleged threats raised a conflict in the evidence as to whether a police agent induced the criminal intent to obtain and distribute the second lot of marijuana. *See Ossen v. Commonwealth,* 187 Va. 902, 911, 48 S.E.2d 204, 208 (1948). We must decide whether the evidence, when viewed most favorably to Howard's entrapment defense, could support a finding that Howard harvested the second lot of marijuana because of threats of harm to him and his family.[2] *See McCoy v. Commonwealth,* 9 Va. App. 227, 229, 385 S.E.2d 628, 629 (1989). Entrapment is the conception and planning of an offense by a police agent, and his or her procurement of its commission by "one who would not have perpetrated it except for the trickery, persuasion, or fraud" of the police. *Schneider v. Commonwealth,* 230 Va. 379, 381, 337 S.E.2d 735, 736 (1985). Howard's own evidence shows that he did not return to the Midwest because of Himes's threats. Rather, several days after his conversation with Himes, Howard and a companion left the state on a planned camping trip. While on this trip, Howard discovered some wild marijuana by accident and of his own volition decided to harvest and sell the plant to Lilley. This evidence does not justify instructing the jury on an entrapment theory. It is error to give an instruction that correctly states an abstract legal principle unless evidence exists to support giving of the instruction. *Swift v. Commonwealth,* 199 Va. 420, 424, 100 S.E.2d 9, 13 (1957); *McCoy,* 9 Va. App. at 234, 385 S.E.2d at 631.

---

[2] The Commonwealth correctly states in its brief that these facts lend themselves, if to any defense, to one of duress more readily than entrapment. Howard did not offer an instruction on duress and we do not decide whether, had such an instruction been tendered, the trial court would have been required to give it.

For the foregoing reasons, we find no merit to Howard's assignments of error. Accordingly, the convictions appealed from are affirmed.

*Affirmed.*

Elder, J., and Fitpatrick, J., concurred.