COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Kelsey and Alston
Argued at Chesapeake, Virginia

LAWREESE JEROME BOWSER

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0662-13-1              JUDGE ROBERT P. FRANK
                                                MARCH 4, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John R. Doyle, III, Judge

Diane P. Toscano (The Law Firm of Diane P. Toscano, P.C., on
brief), for appellant.

John W. Blanton, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


Lawreese Jerome Bowser, appellant, was convicted in a bench trial of three counts of

possession of cocaine with intent to distribute, second or subsequent offense, in violation of

Code § 18.2-248. The convictions are for incidents that occurred on three separate dates. On

appeal, he argues that no rational trier of fact could have found him guilty, as he did not initiate

the drug transactions and was instead persuaded by a police officer to sell drugs to her.

Essentially, he contends he was the victim of entrapment.[1] For the reasons stated, we disagree

with appellant and affirm the trial court.

BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant does not contest that he sold drugs to the police officer.

Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

So viewed, on the afternoon of February 16, 2012, Norfolk Police Investigator Dallas Greeson was working undercover with the Vice & Narcotics Unit. Greeson approached a man who was walking down Manson Avenue. Investigator Greeson asked the man "who was looking out," which is common street parlance for who is selling or who has drugs. The man nodded across the street in the direction of a man whom Greeson identified as appellant.

Appellant approached Investigator Greeson's car and asked what she wanted. Greeson said she wanted a dub, which is a street term for $20 worth of crack cocaine. Appellant asked Greeson if she was the police, and she said she was not. Appellant said, "Look, I have a lot to lose." Greeson responded that she also had a lot to lose and that she was trying to get her children back. Investigator Greeson also gave appellant her phone number when he asked for it. Greeson told appellant, "[n]o one really wants to f*** with me out here." Appellant took a couple of steps back and hesitated. At trial, Greeson explained that she meant that no one else was willing to sell drugs to her.

Appellant then asked Greeson where the money was, and she handed him $20. Appellant dropped a small, rocklike substance into Greeson's passenger seat. The substance was later identified as crack cocaine. As Investigator Greeson drove away, she received a phone call, and she recognized the caller's voice as appellant's. He identified himself as DL and told her to call him back if she needed to get another hookup.

On February 20, 2012, Investigator Greeson telephoned appellant and told him she "needed a little fix." Appellant said, "I don't do that anymore. I'm saved." Greeson said okay, and then appellant asked her where she was. After she told him, appellant told Greeson to meet

him at a nearby restaurant. Greeson asked appellant, "are you going to hook me up?" and appellant told her to just meet him at the restaurant.

When Investigator Greeson arrived at the restaurant, she called appellant. He told her to come inside because he had food for her. Greeson told him she did not want any food and was going to get sick if she didn't get "the stuff." Appellant came outside and got into Greeson's car. He told Greeson that he was very skeptical of her. Appellant asked Greeson, "[a]re you going to ride with me to get it?" Greeson responded that she would, and she started to pull out of the parking lot. Then appellant got out of Greeson's car, and he told Greeson, "Meet me at the street you were before the first time but on the next street over. I'm going to follow you."

At appellant's direction, Investigator Greeson drove to Vine Street. When she got there, she called appellant and asked him where he was. Appellant said he had to drop off a car and would be there within twenty minutes. Ten minutes later, Greeson drove away and called appellant. She told him she had to leave, saying, "my old man's going to whip my ass if I don't get home." Appellant said he was coming to her. Greeson made a U-turn, and a car honked at her. Appellant was in the passenger seat of the car. The car pulled up beside Greeson. Appellant nodded at the driver, who then held out his hand. Greeson gave the driver $25, and the driver handed the money to appellant. Appellant handed the driver two small baggies of suspected crack, and the driver dropped them into Greeson's hand.

On February 23, 2012, Investigator Greeson called the phone number appellant had given her. There was no answer. Greeson then drove to the 1500 block of Manson Street, the location where the first sale had occurred, and saw appellant. She asked appellant who was "looking out" that day. Appellant responded, "huh?" and Greeson said "let me get a dub." Appellant again said, "huh?" and Greeson repeated, "let me get a quick dub." Appellant said he did not do that, so Greeson said, "listen, baby, give me a call." Appellant nodded and said okay.

Greeson drove away and pulled into the parking lot of a convenience store. As she was pulling in, a small white car pulled up behind her and started honking the horn. Appellant was driving, and he pulled in beside Investigator Greeson. Greeson rolled down her window, and appellant told her to get out of the car. As she approached the driver's side of appellant's car, he opened the door and threw a small bag of suspected crack cocaine to the ground, then held out his hands. Greeson asked appellant where the bag was, and he pointed to the ground. Greeson handed appellant $20, picked up the bag, and left the parking lot.

The Commonwealth introduced appellant's prior conviction order for possession of heroin with intent to distribute, and it was admitted into evidence without objection.

At trial, Investigator Greeson acknowledged being friendly and using terms like "baby" and "dear" with appellant. She denied flirting with appellant.

The trial court found that the first incident was "quite straightforward" with no evidence of entrapment. The court further noted that appellant gave Investigator Greeson his phone number after that transaction, indicating "a willingness to engage in future sales." The court went on to say "that certainly indicates – I think just in and of itself indicates that there's no entrapment here." Regarding the second transaction, the court noted that although appellant initially said he no longer sold drugs when Greeson called him, he then directed her to a restaurant, where he sold drugs to her. As for the third incident, the court noted that after appellant told Greeson he did not sell drugs, Greeson left and went to a convenience store, but appellant followed her and made another sale. The trial court did not accept appellant's entrapment defense. This appeal follows.

ANALYSIS

Appellant contends that no rational trier of fact could have found him guilty, because he did not initiate the drug transactions with Investigator Greeson, but instead was persuaded, or entrapped, into selling drugs to Greeson.

## Sufficiency

When the sufficiency of the evidence is challenged on appeal, this Court will "review the evidence in the light most favorable to the Commonwealth and give it all reasonable inferences deducible therefrom." McGee v. Commonwealth, 4 Va. App. 317, 322, 357 S.E.2d 738, 740 (1987). We will affirm the judgment appealed from unless it appears from the evidence that it "is plainly wrong or without evidence to support it." Id. (citing Naulty v. Commonwealth, 2 Va. App. 523, 529, 346 S.E.2d 540, 544 (1986)).

> Moreover, "[i]f there is evidence to support the conviction, an appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion." Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998).
>
> Furthermore, "[t]he credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (citations omitted).

Snow v. Commonwealth, 33 Va. App. 766, 774, 537 S.E.2d 6, 10 (2000).

## Entrapment

When an appellant asserts an entrapment defense, the subject of entrapment is an issue of fact and should be resolved by the trial court, as the trier of fact. Schneider v. Commonwealth, 230 Va. 379, 383, 337 S.E.2d 735, 737 (1985). The trial court's factual findings "will not be

disturbed on appeal unless plainly wrong or without evidence to support them." Id. at 382, 337 S.E.2d at 736.

Entrapment is an affirmative defense. See McCoy v. Commonwealth, 9 Va. App. 227, 229, 385 S.E.2d 628, 630 (1989). "In Virginia, a criminal defendant typically bears the burden of 'producing evidence in support of [an affirmative defense] sufficient to raise a reasonable doubt of [his or her] guilt.'" Williams v. Commonwealth, 57 Va. App. 341, 352, 702 S.E.2d 260, 265 (2010) (quoting Regular Veteran's Assoc., Ladies Auxiliary v. Commonwealth, 18 Va. App. 683, 688, 446 S.E.2d 621, 624 (1994)).

"'Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer.'" McCoy, 9 Va. App. at 231, 385 S.E.2d at 630 (quoting Stamper v. Commonwealth, 228 Va. 707, 715, 324 S.E.2d 682, 687 (1985)). "There is nothing improper in the use, by the police, of decoys, undercover agents, and informers to invite the exposure of willing criminals and to present an opportunity to one willing to commit a crime." Stamper, 228 Va. at 707, 324 S.E.2d at 687.

In this case, there was no entrapment. Appellant had a reputation for selling drugs. When asked by Greeson who was selling drugs, the unidentified man nodded toward appellant. The first encounter between Greeson and appellant was initiated by appellant. Further, appellant's criminal record demonstrates that he has previously been convicted of selling drugs. Moreover, during the first encounter with Investigator Greeson, appellant asked if she was the police, indicating that he knew he was about to commit a crime. When Greeson gave appellant money, he gave her the cocaine immediately. The fact that the drugs were already on his person shows his predisposition to sell drugs.

- 6 -

Furthermore, appellant's initial hesitancy to sell to Investigator Greeson is not surprising. He was about to commit an illegal act, and many people in that situation would act with some caution. This is particularly true in this case, as appellant did not know Greeson. However, appellant initiated the contact with Investigator Greeson, before she made any overture toward him, and despite his initial caution, appellant sold to Greeson shortly after meeting her.

After that first transaction, appellant reached out to Greeson once more by calling her and telling her to call him if she needed to buy drugs again. As the trial court properly noted, this act demonstrated appellant's predisposition to engage in future illegal drug transactions.

When Greeson called appellant on February 20, appellant told her he had been saved and no longer sold drugs. Greeson did not attempt to talk appellant into the sale. However, appellant then asked Greeson where she was and told her to meet him at a restaurant. Appellant set up that transaction and later sold her two baggies of crack cocaine.

The third transaction occurred on February 23. Again, while appellant initially denied that he was selling drugs, he followed Greeson after she left. Appellant reinitiated the contact with Greeson, and he completed a third drug transaction.

Appellant may have expressed some hesitation before he sold cocaine to Investigator Greeson, but this does not equate with entrapment. "Entrapment occurs only when the criminal conduct was the product of a 'creative activity' that implants in the mind of an otherwise innocent person the disposition to commit an offense." Schneider, 230 Va. at 382, 337 S.E.2d at 736 (quoting Johnson v. Commonwealth, 211 Va. 815, 817-18, 180 S.E.2d 661, 663 (1971)). Even when Greeson asked appellant to sell to her, her actions did not constitute entrapment. See Neighbors v. Commonwealth, 214 Va. 18, 19, 197 S.E.2d 207, 208 (1973) (where a police informant begged the defendant to sell him drugs, the defendant did not establish that he was entrapped).

Finally, we find that Investigator Greeson's use of terms such as "baby" and "dear" is of no significance. Greeson testified that while she smiled, acted friendly, and used those words, she did not flirt with appellant. Such terms of endearment, under the facts of this case, do not constitute entrapment, as appellant initiated the drug transactions.

The issue of entrapment in this case was a factual issue resolved by the trial court in its capacity as trier of fact. Giving the judge's factual findings the weight to which they are entitled, we cannot say as a matter of law that they are plainly wrong or unsupported by the evidence. See Schneider, 230 Va. at 383, 337 S.E.2d at 737. As such, we will affirm the judgment of the trial court.

### CONCLUSION

Appellant was predisposed to sell drugs, so he was not entrapped by Investigator Greeson. As such, the evidence was sufficient to support his convictions, and the trial court did not err in finding him guilty.

Affirmed.